# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 98-CA-00419-SCT

*MACK TRUCKS, INC. AND CUMMINS ENGINE*
*COMPANY, INC.*
*v.*

*BOBBI TACKETT, WRONGFUL DEATH*
*BENEFICIARY OF TONY JOE MURPHREE*

### ON MOTION FOR REHEARING

| | |
|---|---|
| DATE OF JUDGMENT: | 11/26/1997 |
| TRIAL JUDGE: | HON. BARRY W. FORD |
| COURT FROM WHICH APPEALED: | LEE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | H. MITCHELL COWAN |
| | JOSEPH J. STROBLE |
| | MICHAEL D. CHASE |
| | L. F. SAMS |
| | WILLIAM C. SPENCER |
| | POPE SHANNON MALLETTE |
| ATTORNEYS FOR APPELLEE: | E. FARISH PERCY |
| | GARY L. CARNATHAN |
| | GRADY F. TOLLISON |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND REMANDED IN PART- 03/27/2003 |
| MOTION FOR REHEARING FILED: | 03/05/2001 |
| MANDATE ISSUED: | |

**EN BANC.**

**COBB, JUSTICE, FOR THE COURT:**

¶ 1.    The motion for rehearing is granted. The original opinions are withdrawn, and this opinion substituted therefor.

¶ 2.    This products liability case presents issues of liability as well as apportionment of any such liability under our allocation of fault statute, Miss. Code Ann. § 85-5-7 (1999). We

dispose of the liability issues summarily and affirm. Plaintiff, on cross-appeal, presses an issue regarding punitive damages with respect to which we also affirm the trial court summarily. As to allocation of fault, we conclude that allocation of fault to immune employers is consistent with § 85-5-7 and required under *Estate of Hunter v. General Motors Corp.*, 729 So. 2d 1264 (Miss. 1999), provided that they are not held liable for damages. We conclude that the trial court properly found the remaining non-settling defendants liable for half the recoverable damages under § 85-5-7(2). Finally, we reform the judgment to properly reflect the fault assessed by the jury. In accordance with these conclusions, we affirm in part and reverse and remand in part.

I.

¶ 3. This case is an appeal of a wrongful death action arising from the death of an employee of Wilburn Oil Company ("Wilburn Oil"). The plaintiff is Bobbi Tackett ("Tackett"), only daughter and wrongful death beneficiary of Tony Joe Murphree, the employee who died as a result of an explosion while unloading fuel for his employer. On May 12, 1993, Murphree and Roger Angle, another Wilburn Oil employee, each had truckloads of fuel on two separate trucks, one a Mack powered by a Mack engine, the other a Freightliner powered by a Cummins engine. Murphree was the Mack truck driver. Angle was the Freightliner driver.

¶ 4. Contrary to company policy, but consistent with at least one prior occasion, Murphree and Angle decided to offload both trucks at once. Fuel was unloaded from both trucks using hoses and a "T" connector. The fuel was driven by a pump powered by a power-take-off (PTO) on the Mack truck, necessitating that the Mack engine be left running. The

2

Freightliner engine was also left running, though this was not necessary since only the Mack truck was used to pump the fuel to the above ground storage tanks. The Freightliner engine should not have been left running under ordinary safety procedures.

¶ 5. Just prior to the explosion Angle was on top of his tanker attached to the Freightliner, looking down into the tanker compartment, checking to see how much fuel was unloaded. Angle said it was at this point that he looked over and saw gas spraying in the air. This was approximately ten to fifteen minutes into the off-loading process. The gasoline spray was coming up between the two trucks, toward the Freightliner on which Angle stood. The spray was like a mist from a garden hose when a thumb is held over it. Upon seeing the spraying fuel, Angle shouted to Murphree to cut off the truck or get off the truck as he ran back toward the rear of his tanker. At this point Angle jumped from the tanker, and one of the trucks exploded. Prior to the explosion he last saw Murphree running toward the Freightliner. After the explosion Angle heard Murphree scream, but he could not see him. Angle went around the side of the truck looking for Murphree when a second explosion occurred. Thereafter, Murphree walked out between the two trucks on fire. He received burns to 99 percent of his body and died in a hospital on May 14, 1993.

¶ 6. Tackett filed this wrongful death action in the Lee County Circuit Court seeking damages from defendants Mack Trucks, Inc. ("Mack"), which built the Mack truck; Cummins Engine Company, Inc. ("Cummins"), which manufactured the diesel engine in the Freightliner truck; and Freightliner Corporation, which manufactured the Freightliner truck. Tackett claims that the defendants caused her father's death and are liable to her based on theories of products liability and failure to warn. Tackett claims that the engines in both

3

trucks were defectively designed because they did not contain an automatic shutoff device and that the trucks' air intake systems should have been fitted with a safety device which would close it off if the engine exceeded a certain speed. Tackett also claims that there were inadequate warnings of the danger concerning (i) the alleged danger posed by the operation of a diesel engine in an environment where there are or can be combustible vapors; (ii) the alleged need for safety shutdown devices, and/or (iii) the appropriate response in the event of an engine overspeed or runaway.

¶ 7. Tackett's theory is that one or both of the engines caused the fire in which Murphree was severely burned and died. Tackett argued that the engine of either the Mack or the Freightliner, or both, began to run away because of the ingested volatile fumes, and the runaway caused the explosion and fire. "Runaway" or "overspeeding" is a phenomenon whereby a diesel engine sucks in a volatile gas or vapor through its air intake system. In such a situation the engine will continue to run even if there is no diesel going into it. The only way to stop the engine is to stop the air or stop the fuel. In such a situation the idle can increase dramatically.

¶ 8. John Wiss, Tackett's expert in the fields of mechanical engineering and fire origin or causation, testified that in his opinion both engines "spun up" after ingesting gasoline vapors through the air intakes. Wiss testified that in his opinion the probable cause of the fire was that one of the engines, either one, caused the fire by running away, overheating its exhaust pipe, and probably blowing flames through the exhaust igniting the gasoline. Wiss also testified that in his opinion both the Mack diesel engine in the Mack truck and the Cummins diesel engine in the Freightliner were unreasonably dangerous for the environment that they

4

were in.

¶ 9.    During depositions Angle testified he was "99 percent positive" that Murphree got the Freightliner shut down. However, Angle testified at trial that he heard one of the trucks blow up, but did not see which one. Angle assumed it was the Mack but only if Murphree had managed to shut down the Freightliner; he could not say for certain which truck started the fire.

¶ 10.    The defendants offered other theories regarding how the fire may have been ignited. Dr. Edward Cox, a metallurgy expert retained by Cummins, testified that he did not find any internal damage to either engine or evidence that either engine oversped. Other possible ignition sources suggested by the defendants are either the electrical system or hot engine or exhaust parts. Dr. Cox testified that in his opinion the source of the fire was from a spark originating from a battery cable on the Mack truck. The defendants also argued that the proximate cause of the fire was the leaking fuel, caused by a worn hose or coupling, and the negligence of the employees, but not the trucks or their diesel engines.

¶ 11.    Gilbert Rhoades, an expert in accident reconstruction and mechanical engineering retained by Cummins, testified that in his opinion the ignition source was the shorted out battery cables on the Mack truck. Rhoades testified that he found no signs that the Cummins engine ever operated at above normal temperatures or oversped, and that in his opinion the Cummins engine was not a factor in causing the fire.

¶ 12. Curtis Mark Siemers, Freightliner's expert in fuel hauling, handling, and transportation, testified that the connection between the fuel hoses, the two trucks, and the storage tanks was inherently unsafe, because not all hoses, connections and fittings could be

monitored at the same time. He also stated that it was dangerous for the two trucks to be parked next to each other while unloading. Siemers also testified that one of the couplings at the hose had a shim in it to make a tighter connection, indicating that the coupling was worn, and that to use such a shim was not a safe procedure.

¶ 13.   Dr. John Moskwa, Mack's expert in mechanical engineering and diesel, also testified that there was no evidence of overspeed in the Mack truck and that the Mack was the least likely to overspeed due to its dual air intake design and the fact that it was operating under a load, driving the PTO to pump the fuel. Dr. Moskwa also testified that he found no evidence of overspeeding in the Cummins engine. He testified that in his opinion neither the Mack or the Cummins engines was defective or unreasonably dangerous.

¶ 14.   George Casallas, Mack's expert in electrical engineering, fire reconstruction, and forensic engineering, testified that in his opinion the fire originated in the Freightliner truck, that it was not overspeeding that caused the fire, and that in his experience an overspeeding engine would not cause an instantaneous fire such as the one in this case. Casallas stated that the fire was hotter, longer in duration, and more intense in the Freightliner.

¶ 15.   Tackett reached a settlement with Freightliner just before closing arguments. She had earlier settled with other defendants. The case was submitted to the jury against Mack and Cummins, and the jury was instructed to allocate percentages of fault as between Murphree, Wilburn Oil, Mack and Cummins. The jury found from the preponderance of the evidence that both defendants—Cummins and Mack—were guilty of fault on either of Tackett's claims, which was the proximate cause of Murphree's death. The jury further found that negligence on the part of Wilburn Oil and Murphree himself were also proximate causes of

Murphree's death. The jury then made an allocation of fault as follows: Murphree, 60%; Wilburn Oil, 39%; Mack, ¾%; and Cummins, ¼%.

¶ 16.   The jury assessed total damages of $1.8 million. In formulating the judgment the trial court applied the settlement proceeds from the other defendants, totaling $330,000, to reduce the damages assessed to $1,470,000. After deducting 60% of that amount for the fault attributed to Murphree, it arrived at recoverable damages of $588,000. Since the fault attributed to Wilburn Oil was uncollectible due to the employer's immunity under our workers' compensation law, Mack and Cummins were determined to be jointly and severally liable to the extent necessary to allow a recovery of 50% of recoverable damages, to wit, $294,000. The trial court then allocated the $294,000 between Mack and Cummins in proportion to their relative percentages of fault, that is, a ratio of 3 to 1, and entered judgment against Mack for $220,500 and against Cummins for $73,500.

¶ 17.   On appeal, the defendants argue that their products were not defectively designed, that they had no duty to install an air intake safety device, and that there was no evidence presented which would support the proposition that the use of such a device would have prevented the fire. The defendants further argue that they were improperly held liable for the employer's share of fault and, in any event, that the method of deducting the settlement was unlawful. Mack further contends, all else failing, that the method of apportionment of the joint and several liability as between Cummins and it was unlawful.

¶ 18.   Tackett argues that the engine overspeeding phenomenon was known to the industry and that the defendants had a duty to warn of the danger and to install a safety shut-off

7

device. Tackett cross-appeals asserting that she should have been allowed to argue punitive damages to the jury.

II.

¶ 19.   After careful consideration of the briefs and the record, we treat the liability issues summarily.

a.

¶ 20.   This case involved a battle of experts regarding whether either or both engines in question were defectively designed for failure to include an automatic air intake shutdown device to prevent "overspeeding," whether there was a failure to adequately warn of the danger from overspeeding and whether either or both of these failures proximately caused the accident. We conclude that there was sufficient evidence to present a jury question as to each issue.

> Once the jury has returned a verdict in a civil case, we are not at liberty to direct that judgment be entered contrary to that verdict short of a conclusion on our part that, given the evidence as a whole, taken in the light most favorable to the verdict, no reasonable, hypothetical juror could have found as the jury found.

*Bell v. City of Bay St. Louis*, 467 So. 2d 657, 660 (Miss. 1985).

¶ 21.   The defendants argue that *Hall v. Mississippi Chemical Express, Inc.*, 528 So. 2d 796 (Miss. 1988), is controlling Mississippi precedent for the proposition that both the truck and the diesel engine were not defective as a matter of law. That case, however, turned on the level of proof before the Court at that time. The conclusion reached in that case is not binding upon this Court in its review of a different record.

¶ 22. Accordingly, we affirm the action of the trial court in accepting the verdict and refusing to set aside the verdict of the jury.

b.

¶ 23. Tackett contends that she should have been allowed to present the issue of punitive damages to the jury. Our review convinces us that the trial court did not err in refusing to submit this issue to the jury in that there was no clear and convincing evidence of malice or gross negligence. Miss. Code Ann. § 11-1-65(1) (Rev. 2002.)

III.

¶ 24. The defendants claim that the court erred in allocating liability by attributing that portion of the fault allocated to Wilburn Oil to them collectively and, in any event, by improperly deducting the settlement proceeds from the entire assessment of damages. Mack also contends that there was an improper allocation as between it and Cummins.

a.

¶ 25. Tackett suggests that Wilburn Oil should never have been included in the allocation of fault and, therefore, that the trial court properly re-allocated the jury's assessment against Wilburn Oil to the defendants. She argues that employers, immune by virtue of our workers' compensation law, are not parties or potential parties subject to historical joint and several liability in tort for injuries to their employees and, as such, should not be included in an equation designed to apportion fault only for purposes of imposing joint and several liability. We agree with Tackett's overall result, though not with her theory.

¶ 26. In *Estate of Hunter v. General Motors Corp.*, 729 So. 2d 1264 (Miss. 1999), this

Court held that "party" in § 85-5-7(7) "refers to *any participant* to an occurrence which gives rise to a lawsuit, and not merely the parties to a particular lawsuit or trial." *Id.* at 1276 (emphasis added). That ruling was "based on sound considerations of judicial fairness," *id.* at 1275 (referring to Florida holding adopted in *Estate of Hunter*). We held that "party" in the statute swept broadly enough to bring in entities which would not or could not have been "parties to a lawsuit," thus including immune parties along with everybody else under the sun. *Id.* at 1273. Indeed, this Court declared:

> This State's system of civil justice is based upon the premise that all parties to a lawsuit should be given an opportunity to present their versions of a case to a jury, and the interpretation of § 85-5-7 urged by the plaintiffs [i.e., excluding those parties not in the suit] would **seriously infringe upon a defendant's rights in this regard in many cases**.

*Id.* at 1274 (emphasis added). Nor does the fact that § 85-5-7 preserves all pre-existing immunities speak to the present issue: even where fault is allocated for purposes of determining a third party's fault, the employer is just as immune as before. Indeed, the language protecting immune parties may be interpreted as being motivated by the statute's extremely broad phrase "each party alleged to be at fault." *Fault* and *liability* are not synonyms. "Fault" is defined by § 85-5-7 as "an act or omission." Immunity from liability does not prevent an immune party from acting or omitting to act. Rather, immunity shields that party from any liability stemming from that act or omission. There is nothing logically or legally inconsistent about allocating fault but shielding immune parties from liability for that fault. And there is no reason to imagine that the Legislature did not intend fault to be allocated against immune parties, insofar as that allocation can be of no detriment to those

10

parties.[1]

¶27.  We must acknowledge our opinion in *Accu-Fab & Construction, Inc. v. Ladner*, 778 So. 2d 766 (Miss. 2001), in which this Court (in dicta) reached the conclusion that Tackett urges with regard to allocation of fault to immune employers.  Having noted *Estate of Hunter*'s relevance to the issue, we went on to distinguish it as follows:

> ¶16. Our decision in **Estate of Hunter** relied in part on a law review article, Jonathan Cardi, *Apportioning Responsibility to Immune Nonparties: An Argument Based on Comparative Responsibility and the Proposed Restatement (Third) of Torts*, 82 Iowa L. Rev. 1293 (1997). In this article,

---

[1]We note that the Legislature has recently amended § 85-5-7 to include the following language:

> Except as provided in subsection (6) of this section, in any action involving joint tort-feasors, the trier of fact shall determine the percentage of fault for each joint tort-feasor, including named parties and absent tort-feasors, **without regard to whether the joint tort-feasor is immune from damages**. For noneconomic damages, a defendant's liability shall be several only. For economic damages, for any defendant whose fault is determined to be less than thirty percent (30%), liability shall be several only and for any defendant whose fault is determined to be thirty percent (30%) or more, liability shall be joint and several only to the extent necessary for the person suffering injury, death or loss to recover fifty percent (50%) of his recoverable damages. **Fault allocated under this subsection to an immune tort-feasor or a tort-feasor whose liability is limited by law shall not be reallocated to any other tort-feasor.**

2002 Miss. Laws 3d ex. sess. ch. 4, § 3 (H.B. 19) (to be codified as Miss. Code Ann. § 85-5-7(8)) (emphasis added).  While one could argue that the Legislature's amendment demonstrates that the previous law *did* permit reallocation and forbid assessing fault to an immune employer, we consider that the statutory provisions already cited with regard to fault assessment, together with the elementary difference between *fault* and *liability*, support the counter-argument that the Legislature acted only to emphasize its original intent.  *See also* **USPCI of Miss., Inc. v. State ex rel. McGowan**, 688 So. 2d 783, 787 (Miss. 1997) ("When cases are in the bosom of this Court and there is involved a statute that is modified prior to a final decision of this Court, we take that modification into consideration.") (quoting **Bell v. Mitchell**, 592 So. 2d 528 (Miss. 1991)).

11

> Cardi discussed two approaches to handling the problem. He concluded that the better of the two approaches is to exclude the immune party from apportionment. *Id.* at 1331-36.
>
> ¶ 17. When the Connecticut Supreme Court addressed the issue, it also found that exclusion of the immune party from apportionment was the best approach. The Court further found that its decision was consistent with the majority of other jurisdictions which have decided the issue. See *Durniak v. August Winter & Sons, Inc.*, 222 Conn. 775, 610 A.2d 1277 (1992). We agree with the foregoing authorities that exclusion of the immune party from the apportionment process is the best approach.

*Ladner*, 778 So. 2d at 771. Our reliance on Cardi and *Durniak* has been rightly criticized:

(1) Cardi's article specifically excluded workers' compensation immunity from its analysis and (2) *Durniak* specifically reserved the question before this Court in *Ladner*, i.e., the situation where "the defendant, having filed a general denial, sought to make an evidentiary showing that it was the employer's conduct rather than the defendant's conduct that had proximately caused the employee's injuries"; in such a case, the *Durniak* court noted, "a different result might follow." *Durniak*, 610 A.2d at 1280-81 n.5 (citing *Williams v. Union Carbide Corp.*, 734 S.W.2d 699, 703 (Tex. Ct. App. 1987)). *See* Robert B. Ireland, III, Comment, *Modified Joint and Several Liability in Mississippi: The Absent Settling Tortfeasor and the Immune Employer*, 70 Miss. L.J. 821, 839 & nn. 74-7 (2000) (making the above criticisms in the course of critiquing *Ladner* and the original opinion in this case). The result of immunizing employers from fault as well as from liability is that third parties pick up the tab for the employer's fault, potentially paying more than their share in order to make up for the excluded employer. The dissenting opinion in the Court of Appeals' opinion in *Ladner* bears attentive reading:

> The question becomes whether the injured plaintiff must see his potential recovery diminished by an assignment of fault to his immune employer or

12

> whether a third party defendant may be made to respond in damages in an amount that exceeds that defendant's proportionate share of fault in causing the injury. In my view, the **more equitable result is to permit allocation of fault to the exempt employer.** *While this diminishes the injured party's ultimate recovery in the tort action, the injured party has already obtained or may, post verdict, seek recovery under the compensation law from his employer.* This right of recovery under workers' compensation law is *specifically intended* **to replace the previously-existing common law right of recovery against the employer in tort**.

*Accu-Fab & Constr., Inc. v. Ladner*, No. 96-CA-00692-COA, at ¶ 51 (Miss. Ct. App. Mar. 14, 2000) (McMillin, C.J., dissenting) (all emphasis added).

¶ 28.   To immunize employers from fault allocation in third-party tort suits would go against the spirit of the bargain between employers and employees that underlies workers' compensation; instead, the third party would pay the employer's cost of compensation, and the employee would have the possibility of recovering in tort for his employer's fault, since that would then be allocated to the third party.  This certainly would benefit employers, and to some extent plaintiffs—but third parties should not be assessed to supplement our system of workers' compensation.  To the extent that *Accu-Fab* may be construed as stating that immune parties may not be assessed fault (as opposed to liability) under § 85-5-7, therefore, that opinion is overruled.[2]  We note, however, that the allocation of fault to Wilburn Oil does not directly change the result in this case, which is why we said we agree with Tackett's

---

[2]The holding in *Accu-Fab* was predicated on the controlling precedents of federal case law, since Ladner was a beneficiary under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901 *et seq*.  *Accu-Fab*, 778 So. 2d at 769-70.  *Estate of Hunter* was therefore not applicable; nevertheless, we went on to state:  "Furthermore, we would reach the same conclusion even if the Longshoremen's and Harbor Workers' Compensation Act was not implicated."  *Id.* at 770.  Thus, the remarks about *Estate of Hunter* were dicta, and the present opinion does not impugn the correctness of the holding in *Accu-Fab*.

13

result.  Although Mack and Cummins were assessed only a single percent of fault between them, they remain jointly and severally liable for fault up to 50% under § 85-5-7.  Whatever the equity or inequity of this result (and we notice that under the amended § 85-5-7, *supra* n.1, their fault would be confined to the 1% assessed by the jury), that was the law at the time of the accident, and that is the result we are bound to impose.[3]

b.

¶ 29.   The defendants claim that even if they are deemed liable for the portion of fault attributed to Wilburn Oil, the trial court erred in computing their level of liability by deducting the settlement amount from the assessment of damages before reducing that assessment for the allocation of fault as between the plaintiff's decedent and defendants. They would have applied the fault attributed to plaintiff's decedent to reduce the damages to $720,000 and then applied the statutory 50% joint and several rule to that amount. From the resulting $360,000, they would deduct the $330,000 paid by the other defendants to leave $30,000 for them to pay.

¶ 30.   They argue that this result would still cause them to pay more than the collective 1%

---

[3]Cummins argues that joint and several liability is imposed only up to 50% of the "recoverable damages" under § 85-5-7(2), and that since damages are not recoverable against Wilburn Oil, 39% of the damages should be subtracted before the 50% that Mack and Cummins must meet can be calculated.  But "[r]ecoverable damages are the total damages minus any damages allocated to other parties."  ***Classic Coach, Inc. v. Johnson***, 823 So. 2d 517, 520 (Miss. 2002).  *Fault*, not *damages*, was allocated to the immune employer.  Hence there are no damages allocated to Wilburn Oil that must be subtracted from the total damages awarded.

The fact that the defendants cannot seek contribution against Wilburn Oil leaves them in no worse condition than any other tortfeasors whose fellow tortfeasors turn out to be judgment-proof.

allocated to them, that is, $18,000. They suggest that for this reason our decision in *McBride v. Chevron U.S.A.*, 673 So. 2d 372 (Miss. 1996) is distinguishable. In *McBride* we upheld the settlement-first method used by the trial court here, where the issue put to the jury involved only an allocation of fault as between the plaintiff and non-settling defendants. That is in fact what happened here, with the additional factor of the allocation to the immune employer, which does not affect the analysis. Since the jury did not have the option of assessing fault against the settling defendants, the trial court deducted the total amount of the settlements from the award, as dictated in *McBride*:

> This opinion is limited, however, to cases in which, as here, the trial court instructed the jury to consider only the relative culpabilities of the plaintiff and the non-settling defendant(s) in apportioning fault under comparative negligence principles.

*Id.* at 380.

¶31. However, the trial court did not have available to it this Court's decision in *Estate of Hunter*, in which we stated:

> § 85-5-7(7) provides that the trier of fact should allocate fault to each party "alleged to be at fault." There is no indication that the Legislature intended to reserve for plaintiffs the sole and exclusive right to make allegations of fault before a jury and to deprive defendants of the opportunity to persuade a jury that fault for a given accident lies elsewhere.

729 So. 2d at 1273-74. It is evident from the facts recounted above that Mack's expert Casallas opined that Freightliner's truck was at fault. But in their briefs before this Court, neither defendant assigns any error, even though Mack had objected at trial to the exclusion

15

of Freightliner from allocation.[4]   It is well established that an appellant must brief an issue

for it to be reviewed on appeal.  ***Smith v. Dorsey***, 599 So. 2d 529, 532 (Miss. 1992).  The

issue thus is not before this Court, unless we choose to invoke plain error.  Taking into

account judicial economy, the expense to all parties of remounting a new trial, and the length

of time that the wrongful death beneficiary has waited for her relief, we do not choose to

invoke that exception to our normal rules.  No question of fundamental fairness appears to

arise.  This Court will not be more diligent in protection of the defendants' rights than they

---

[4]Freightliner participated in drafting jury instructions and settled on the morning of the day that the trial court instructed the jury.  The discussion then went as follows:

> THE COURT:      The form of the verdict.
> [CUMMINS]:      It probably should be to take Freightliner out, because I think the appropriate result would be either allocation or credit and . . .
> [TACKETT]:      I think—I think this is covered in a Mississippi Supreme Court decision.  I can remember the justices—I think it has to be out for consistency, and they would be entitled to credit, of course.
> THE COURT:      You all have a form of the verdict?
> [CUMMINS]:      Just have to strike Freightliner out of it, don't we?
> [TACKETT]:      Yes, sir.  That complicated form, Your Honor, we'll have to take Freightliner out.
> (OFF RECORD.)
> [MACK:]         Your Honor, I'd like the record to reflect that Mack stands by its position on allocation that we previously expressed with regard to absent and settling defendants.  We do not withdraw our verdict form.

This "previously expressed" position appears to be where Mack's counsel asks "for the record to be clear that Mack has requested allocation to [two other settling defendants], and I want the record to be clear that I'm not withdrawing my request for allocation."

Mack in its brief complains about Wilburn Oil's fault being "allocated" to Mack (which it was not).  It does not challenge the trial court's non-allocation to Freightliner or the other settling defendants.

themselves choose to be. On the facts of this case, the trial court's use of the settlement-first method of *McBride* was not reversible error.

c.

¶ 32. Finally, it is contended that the trial court erred as between Mack and Cummins by allocating their liability for the fault attributed to Wilburn Oil as well as their joint and several liability to reach the 50% goal proportionately in accordance with the jury allocation of fault to them respectively. We agree. Allocation of liability (as opposed to fault) is governed by § 85-5-7.

¶ 33. The judgment should be reformed to find that Mack is individually liable for $11,025 (its ¾% of $1,470,000) and Cummins for $3,675 (its ¼% of $1,470,000). Because they are jointly and severally liable for the entirety of the $294,000 (50% of recoverable damages), assuming each pays its individual percentage, their total payments should be $150,675 for Mack ($139,650 + $11,025) and $143,325 for Cummins ($139,650 + $3,675).

IV.

¶ 34. For the foregoing reasons, the judgment of the circuit court is hereby affirmed in all respects except as to the allocation of liability as between Mack and Cummins. The judgment is reversed and remanded to the trial court for reformation as indicated herein.

¶35. **AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

**PITTMAN, C.J., SMITH, P.J., WALLER AND CARLSON, JJ., CONCUR. GRAVES, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION. McRAE, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY DIAZ AND EASLEY, JJ.**

**McRAE, PRESIDING JUSTICE, DISSENTING:**

¶36. I dissent to the majority's finding that the $330,000 settlement between Tackett and Freightliner should be deducted from the total verdict of $1.8 million and to the majority's allocation of apportionment between Mack and Cummins.

¶37. The majority finds that Tackett's $330,000 settlement with Freightliner should be deducted from the total verdict of $1.8 million. Freightliner was not apportioned any fault; therefore the settlement between Freightliner and Tackett should not be a relevant factor in computing apportionment of damages. Nowhere in Miss. Code Ann. § 85-5-7 (1999) does the Legislature address the deduction of settlements from jury verdicts when a defendant has not been apportioned fault by a jury. By deducting the settlement from the judgment, the majority is essentially holding Freightliner at fault with no justification or jury finding of apportionment.

¶38. As the majority correctly found, Wilburn Oil, an immune tortfeasor, cannot be apportioned liability for the purposes of joint and several liability. With that being said, the majority seems to throw to the wind the jury's 39% finding of fault of Wilburn Oil. Where did this figure disappear to in the majority's equations? Either this case needs to be remanded for a jury determination without the apportionment of fault of Wilburn Oil or this Court needs to allocate the 39% to Mack and Cummins according to their 3 to 1 fault ratio, as found by the jury. The math would look like this:

```
$1,800,000   Verdict
($1,020,000) Murphree's 60% Fault
$  780,000   Remaining Verdict
$  390,000   50% according to § 85-5-7(2)
```

18

Mack

 3/4% jury apportionment
 3/4% of 39%=29.31%
 29.31% + 3/4%=30.06% Total
 30.06% of $780,000 (remaining verdict)=$244,486 Individually

Cummins

 1/4% jury apportionment
 1/4% of 39%=9.77%
 9.77% + 1/4%=10.02%
 10.02% of $780,000 (remaining verdict)=$78,156 Individually


 $390,000    50% according to § 85-5-7(2)
 ($244,486)
 ($ 78,156)
 $6,376 jointly and severally liable to achieve 50% under § 85-5-7(2)

¶39.   For these reasons, I respectfully dissent.

**DIAZ AND EASLEY, JJ., JOIN THIS OPINION.**