# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2009-CA-00570-SCT

*ROBINSON PROPERTY GROUP, LIMITED*
*PARTNERSHIP D/B/A HORSESHOE CASINO*
*AND HOTEL*

*v.*

*OLIVIA MCCALMAN, AS PERSONAL*
*REPRESENTATIVE AND AS GUARDIAN OF*
*KEVIN ANDREW MCCALMAN, KENNETH*
*ANTHONY MCCALMAN, THE WRONGFUL*
*DEATH BENEFICIARIES OF SARAH*
*MCCALMAN, DECEASED, AND GERALDINE*
*HOLMES, INDIVIDUALLY AND ON BEHALF OF*
*THE WRONGFUL DEATH BENEFICIARIES OF*
*MICHAEL LEROY HOLMES, DECEASED*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/19/2009 |
| TRIAL JUDGE: | HON. ALBERT B. SMITH, III |
| COURT FROM WHICH APPEALED: | TUNICA COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | DAWN DAVIS CARSON |
| | ROBERT LEWIS MOORE |
| ATTORNEYS FOR APPELLEES: | DANA J. SWAN |
| | RALPH EDWIN CHAPMAN |
| | C. KENT HANEY |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND RENDERED IN PART - 01/13/2011 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**DICKINSON, JUSTICE, FOR THE COURT:**

¶1. The wrongful-death heirs of two persons who died in an automobile accident sued a casino and the driver of the other vehicle. The trial court held the casino and driver jointly and severally liable. The casino appealed, arguing that it cannot be held liable under Mississippi's Dram Shop Act, which requires proof that it served alcohol to the driver when he was visibly intoxicated; and that it cannot be held jointly and severally liable. We find there was sufficient evidence for the jury to find the driver was visibly intoxicated when the casino served him alcohol, so we affirm as to the casino's liability. But because there was no proof that the defendants "consciously and deliberately pursue[d] a common plan or design" to commit the tort, the Joint and Several Liability Act in effect when the suit was filed limits the casino's liability to fifty percent of "recoverable damages," so we reverse and render on that issue.

## BACKGROUND

*Factual Background*

¶2. On Friday, August 2, 2002, Rodney Dean got off work at 2:00 a.m. in Memphis, Tennessee, and, after picking up his paycheck and stopping briefly at home, he headed for the Horseshoe Casino in Robinsonville, Mississippi. A regular customer, Dean had a player's card, and the casino made a note of his card number and the time he started gambling – 4:05 a.m.

¶3. Over the next sixteen hours, Dean gambled and drank free Corona beer – at least "two or three" beers per hour, or perhaps more, according to his testimony – served to him by

casino employees. The servers continually brought him fresh bottles before he had completely finished the previous ones.

¶4. Dean, who was due back at work in Memphis by 9:00 p.m., did not leave the casino until approximately 8:30 p.m. Two eyewitnesses testified he was driving ninety to one hundred miles per hour when he ran a stop sign and a red light and then slammed into another car, killing its driver, Synithia Harris (who also had been drinking), and its two passengers, Sarah McCalman and Michael Holmes. Dean's blood-alcohol level was 0.16 at 10:00 p.m., and 0.13 at 1:00 a.m. An autopsy on Harris showed that her blood alcohol content was 0.08.

*Procedural Background*

¶5. On December 27, 2002, members of the families of McCalman and Holmes filed a wrongful death suit against the casino and Dean – but not Harris. The circuit court entered a default judgment against Dean, the casino filed an answer, and the matter proceeded to trial.

¶6. Dean, who appeared at trial to testify, admitted that he was intoxicated the evening of the accident. The jury – having been instructed to consider the negligence of the two defendants and the driver of the plaintiffs' automobile, Harris – returned a verdict of $700,000 for the McCalman survivors, and $400,000 for the Holmes survivors, and allocated fault as follows: Dean, fifty percent; the casino, forty-five percent; and Harris, five percent.

¶7. The court reduced each award by five percent to account for Harris's negligence; entered a judgment of $665,000 for McCalman and $380,000 for Holmes; and specified that

3

the defendants were jointly and severally liable, meaning both plaintiffs could pursue collection of the entire amount of their respective judgments from the casino.

¶8. The casino filed this appeal, first arguing that it cannot be held liable because it did not serve alcohol to Dean while he was "visibly intoxicated" – a requirement for its liability under Mississippi's Dram Shop Act; and that – even if it is liable – it cannot be held jointly and severally liable because Mississippi's Joint and Several Liability Act limits its liability to its percentage of fault.

## ANALYSIS

### I. The casino may be held liable under Mississippi's Dram Shop Act because the plaintiffs produced sufficient evidence that the casino served alcohol to Dean while he was visibly intoxicated.

*Standard of Review*

¶9. Our standard of review of a jury's factual determination is familiar:

It is a fundamental principle of law that a jury verdict will not be disturbed except in the most extreme of situations. Only in those cases where the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court disturb it on appeal.[1]

*The Mississippi Dram Shop Act*

---

[1] *Coleman v. State*, 926 So. 2d 205, 208–09 (Miss. 2006) (*citing Washington v. State*, 800 So. 2d 1140, 1144 (Miss. 2001); *quoting Walker v. State*, 881 So. 2d 820, 831 (Miss. 2004)) (internal citations and quotation marks omitted).

¶10. Mississippi's statute commonly called the Dram Shop Act, according to its title, provides "immunity from liability of persons who lawfully furnished or sold intoxicating beverages to one causing damage."[2] The statute includes the following exception:

> The limitation of liability provided by this section shall not apply to . . . any holder of an alcoholic beverage, beer or light wine permit, or any agent or employee of such holder when it is shown that the person making a purchase of an alcoholic beverage was at the time of such purchase visibly intoxicated.[3]

¶11. So the question before us is whether the plaintiffs produced sufficient evidence for a reasonable jury to conclude that Dean was "visibly intoxicated" when the casino served him alcohol.

*The Casino's Evidence – Dean Was Not Visibly Intoxicated*

¶12. The casino points to trial evidence that it had trained personnel who would have detected Dean's intoxication, had it been visible, and that its expert witness testified – based on his analysis of police and medical reports – that Dean had not been "intoxicated," "over the legal limit," "under the influence," or "over [0].1," all indicating Dean was not visibly intoxicated while in the casino.

¶13. Also, Dr. Anthony Verlangieri – a toxicologist and pharmacologist – testified that "at the time Mr. Dean left the casino, he was not under the influence." By "under the influence," he explained, he meant "over the legal limit." Asked what documents he had used to form

---

[2] Miss. Code Ann. § 67-3-73(4) (Rev. 2005).

[3] Miss. Code Ann. § 67-3-73(4) (Rev. 2005).

an opinion, he listed a report from the "MED in Memphis,"[4] a Mississippi Crime Laboratory System Report, a Uniform Mississippi Accident Report, and another document. (He was unclear on just what this last report was: "But it's a — it looks like a little different format of the Mississippi Crime Laboratory Report, same case number I mentioned, on Rodney Dean, and results of blood alcohol content.") He also read the autopsy reports, but those would not have been relevant to whether Dean was visibly intoxicated in the casino. Finally, he had the report of the plaintiffs' expert.

¶14.    Dr. Verlangieri testified that Dean had scored well on the Glasgow Coma Scale after the accident — that he had a perfect fifteen on this measure of sensory perception and motor ability, which "would be what a normal person would test." He also stated that the medical records contained no mention of Dean smelling of alcohol.

¶15.    The main thrust of Dr. Verlangieri's testimony was his analysis of Dean's blood test results from the night of the accident. Using a computer program to analyze them, he entered the following data:

- Dean's blood-alcohol content from the first test, which was performed on blood drawn at 9:57 p.m. and which yielded a BAC of 0.13;
- Dean's body weight;
- the type of beer consumed; and,
- "the time frames that [Dean] consumed them," which Verlangieri said was 3:00 to 8:00 p.m.

¶16.    A report generated by the software provided the following estimates of Dean's blood-alcohol content (BAC) at various times during the evening:

---

[4] The Regional Medical Center at Memphis is known as "The Med."

6

- 6:00 p.m.  0.059
- 6:30 p.m.  0.069
- 7:00 p.m.  0.079
- 7:30 p.m.  0.080
- 8:00 p.m.  0.090

¶17. According to Dr. Verlangieri, Dean's BAC would have peaked at 10:00 p.m., but he was not asked – and he did not volunteer – what the BAC would have been at that time. But based on the BAC levels, Dr. Verlangieri testified that Dean would not have shown visible signs of intoxication between 6:00 p.m. and 8:20 p.m. Then, after answering some additional questions about what those signs would have been, he concluded his testimony by stating once again that, based on Dean's BAC levels, he would not have been visibly intoxicated at the casino.

*The Plaintiffs' Evidence – Dean Was Visibly Intoxicated*

¶18. Dean testified that the casino did a brisk business on the Friday evening of the accident, implying that the casino's staff could not have monitored its many customers and evaluated whether each of them was visibly intoxicated. And Dr. Steven Hayne, a forensic pathologist, testified that, at the time Dean left the Casino, his BAC would have been 0.18, basing this conclusion on the 0.13 value from the 1:00 a.m. blood test, and the known rates at which the human body rids itself of alcohol.

¶19. Also, Dr. Hayne – pointing out that the 10:00 p.m. test showed a BAC of 0.16 – worked backward to arrive at a BAC of 0.175 when Dean left the casino. He stated that the slight difference between his two BAC estimates — 0.18 and 0.175 — did not indicate error, but rather that the estimates corroborated one another.

7

¶20.   Dr. Hayne testified that, at these blood-alcohol levels, Dean would have been "significantly" impaired.  When the plaintiffs' counsel asked him whether "those [casino employees] whose job it is and duty it is to observe levels of intoxication or impairment of individuals at the casino would in the exercise of reasonable care have observed [Dean's intoxication]," Hayne replied, "If they are experienced and have that as part of their job, I would expect it."

*Battle of the Experts*

¶21.   This issue presents a classic battle of qualified experts – a battle that was decided by the jury,[5] which believed and accepted the testimony of the plaintiffs' expert, Dr. Hayne.  We will not usurp the jury's role, especially in light of the substantial circumstantial evidence: Dean had spent sixteen hours in the casino, drinking with no food; immediately after he left the casino, Dean was seen driving at reckless speeds approaching 100 miles an hour, and running a red light and stop sign.  Even Dr. Verlangieri, the casino's expert, stated that Dean was legally drunk within a half hour after leaving the casino (when Dean left the casino at 8:00 p.m., he "was not under the influence of ethanol," but that at the time of the accident, about thirty-five minutes later, "he was under the influence of ethanol.").

---

[5] *See, e.g.,* ***Mack Trucks, Inc. v. Tackett***, 841 So. 2d 1107, 1112 (Miss. 2003); ***Cousar v. State***, 855 So. 2d 993, 997 (Miss. 2003) ("The credibility of a witness is a question of fact for the jury to resolve.").

¶22. The jury believed the plaintiffs' expert and rejected the casino's argument that Dean was not visibly intoxicated. The plaintiffs produced ample evidence to meet their burden of proof on this issue, and we affirm the jury's finding of liability against the casino.

**II.     The joint-and-several liability law in effect allowed the casino to be held jointly and severally liable for its percentage of liability, up to fifty percent.**

*The Joint and Several Liability Act*

¶23. The version of the Joint and Several Liability Act in effect at the time the plaintiffs' cause of action accrued was, as one writer put it, "not exactly the paradigm of clear legislative drafting."[6] Before applying it to the facts of this case, some discussion of that statute itself is necessary.

*The General Rule*

¶24. Section 3 of that statute provided the general rule:

> Except as otherwise provided in subsections (2) and (6) of this section, in any civil action based on fault, the liability for damages caused by two (2) or more persons shall be several only, and not joint and several and a joint tort-feasor shall be liable only for the amount of damages allocated to him in direct proportion to his percentage of fault. In assessing percentages of fault an employer and the employer's employee or a principal and the principal's agent shall be considered as one (1) defendant when the liability of such employer or principal has been caused by the wrongful or negligent act or omission of the employee or agent.[7]

---

[6] H. Wesley Williams, III, *1989 Tort "Reform" in Mississippi: Modification of Joint and Several Liability and the Adoption of Comparative Contribution*, 13 Miss. C. L. Rev. 133, 159 (1992).

[7] Miss. Code Ann. § 85-5-7(3) (Rev. 1999) (amended 2003).

9

¶25.   So with only two exceptions, the statute limited the liability of a defendant to "the amount of damages allocated to him in direct proportion to his percentage of fault," meaning that – absent the application of an exception – the casino's liability would be limited to its percentage of fault assessed by the jury – forty-five percent.

*The Exceptions*

¶26.   The exceptions stated in the statute were:

> (2) Except as otherwise provided in subsection (6) of this section, in any civil action based on fault, the liability for damages caused by two (2) or more persons shall be joint and several only to the extent necessary for the person suffering injury, death, or loss to recover fifty percent (50%) of his recoverable damages.
> . . .
> (6) Joint and several liability shall be imposed on all who consciously and deliberately pursue a common plan or design to commit a tortious act, or actively take part in it. Any person held jointly and severally liable under this section shall have a right of contribution from his fellow defendants acting in concert.

And although not a stated exception, subsection 7 provided the following guidance to the jury: "In actions involving joint tort-feasors, the trier of fact shall determine the percentage of fault for each party alleged to be at fault."[8]

¶27.   So, subsection 3 would have abolished joint and several liability, were it not for the two exceptions. One of those exceptions (subsection 2) applies in this case, and the other (subsection 6) does not. Subsection 2 not only allowed, but actually required – as indicated by the word "shall" – joint and several liability where, as in this case, "damages [are] caused

---

[8] Miss. Code Ann. § 85-5-7(2), (6), (7) (Rev. 1999) (amended 2003).

10

by two (2) or more persons." But subsection 2's joint and several liability was limited to fifty percent of "recoverable damages."

¶28.    In this case, the plaintiffs' recoverable damages do not include the five percent of the damages attributable to Harris, who was not a defendant, but do include the ninety-five percent of those attributable to the negligence of the two defendants, the casino and Dean. From there, the math is simple: Total damages = $1,100,000, reduced by 5% = $1,045,000 (recoverable damages), and 50% of "recoverable damages" = 50% x $1,045,000 = $522,500. So the casino may be held jointly and severally liable for $522,500, limited to $332,500 of the $665,000 awarded to McCalman, and to $190,000 of the $380,000 awarded to Holmes.

*Conscious and Deliberate Pursuit of Common Plan or Design*

¶29.    The plaintiffs argue that subsection 6 allowed the trial court to impose full joint and several liability against the casino. We disagree.

¶30.    Subsection 6 provided that "Joint and several liability shall be imposed on all who consciously and deliberately pursue a common plan or design to commit a tortious act, or actively take part in it." In this case, the record includes no evidence that the casino pursued a common plan or design to commit the tort involved here, nor did it actively participate in it. Therefore, subsection 6 does not apply.

¶31.    The jury, as trier of fact, followed subsection 7 of the statute and apportioned fault to each tortfeasor.[9]   It found the casino forty-five percent at fault.   Nonetheless, under

---

[9] Actually, the statute required "the trier of fact [to] determine the percentage of fault for each *party* alleged to be at fault." Miss. Code Ann. § 85-5-7(7) (Rev. 1999) (emphasis added). The

11

subsection 2 of the statute, the casino is jointly and severally liable "to the extent necessary for the person suffering injury, death, or loss to recover fifty percent (50%) of his recoverable damages."[10] So the casino and Dean are jointly and severally liable for up to $332,500 of the $665,000 awarded to the McCalman plaintiffs and for up to $190,000 of the Holmes plaintiffs' $380,000.

### III. There was no evidence for a jury to find comparative negligence.

¶32. The casino requested the trial court to instruct the jury on the comparative negligence of the two deceased passengers for allowing themselves to be driven by an intoxicated driver. The court refused to grant the instruction for lack of evidence to support it.

¶33. A "trial court has the discretion to refuse an instruction . . . *which is unsupported by the evidence*."[11] The record contains scant evidence concerning the alleged impairment of the driver of the car in which the victims rode, and none at all that would justify a factual finding that the decedents knew or should have known that their driver was impaired. As the trial judge aptly put it, "[W]e don't have odds on that they should have known. I think that there is no other testimony on that issue." When defense counsel replied, "Yes, there is," the judge responded, "Well, not enough." The casino does not direct us to any such evidence.

---

term "party" appeared nowhere else in the statute. It is susceptible to more than one interpretation. If it means a party in the sense of named parties to a lawsuit, then Harris's fault could not be taken into account. The appellant did not raise this issue, however, and it is not before the Court at this time.

[10] Miss. Code Ann. § 85-5-7(2) (Rev. 1999) (amended 2003).

[11] **Brown v. State**, 39 So. 3d 890, 898 (Miss. 2010) (*citing **Davis v. State***, 18 So. 3d 842, 847 (Miss. 2009); **Higgins v. State**, 725 So. 2d 220, 223 (Miss. 1998)) (emphasis added).

12

Under the circumstances, it is not possible to conclude that the judge abused his discretion in refusing the instruction.

### IV. No authority is cited that would require admission of evidence that Dean was not criminally charged.

¶34. The final assignment of error by the Casino reads as follows, in its entirety:

> The plaintiffs opened the door to questions of whether or not Mr. Dean had a DUI, as they questioned the officer concerning the notations on the evidence bag. The plaintiffs led the jury to believe Mr. Dean was being investigated for a DUI, but did not allow the defense to explain that Mr. Dean was never charged with DUI. This unexplained inference prejudices the defendant, as an officer was allowed to testify about an investigation of the DUI, without any resolve to the DUI investigation.

> The only cure at the time of the occurrence was to allow defendant's counsel to question to [*sic*] officer whether or not Mr. Dean was charged with DUI, which he was not.

¶35. Because the casino cites no authority in this argument, this Court is not bound to consider it. Mississippi Rule of Appellate Procedure 28(a)(6) requires that "[t]he argument shall contain the contentions of appellant with respect to the issues presented, and the reasons for those contentions, with citations to the authorities, statutes, and parts of the record relied on."[12] This Court repeatedly has held that when a party "cites no authority for [a] proposition . . . we need not consider it."[13]

### CONCLUSION

---

[12] Miss. R. App. P. 28(a)(6).

[13] *E.g.,* ***Read v. So. Pine Elec. Power Ass'n***, 515 So. 2d 916, 921 (Miss. 1987) (*citing* ***Burk v. State***, 506 So. 2d 993 (Miss. 1987); ***Simpson v. State***, 497 So. 2d 424 (Miss. 1986); ***Bonderer v. Robinson***, 502 So. 2d 314 (Miss. 1986)).

¶36. The casino is liable under the Dram Shop Act for the deaths Rodney Dean caused after he left the casino. Under the Joint and Several Liability Act, its liability is joint and several for up to one half of the amount of recoverable damages. The trial court erred by ignoring this statutory limit. The judgment is affirmed in part and reversed and rendered in part, and the judgment is modified to limit the defendants' joint and several liability to fifty percent of recoverable damages.

¶37. **AFFIRMED IN PART; REVERSED AND RENDERED IN PART.**

**WALLER, C.J., CARLSON, P.J., RANDOLPH, LAMAR, KITCHENS, CHANDLER AND PIERCE, JJ., CONCUR. GRAVES, P.J., CONCURS IN RESULT ONLY.**

14