GRIFFIS, J.,
 

 for the Court.
 

 ¶ 1. Bolivar County Sheriffs Deputy Michael Thompson filed suit against Rizzo Farms, Inc., based on personal injuries that Deputy Thompson sustained in a car wreck with Rizzo’s employee, Rodney Brown. The Bolivar County Circuit Court jury found in favor of Rizzo. Deputy Thompson now appeals and argues that: (1) the trial court erred when it denied his motion for a directed verdict and a proposed jury instruction based on negligence per se; (2) the jury was biased; and (8) the trial court applied an incorrect standard of care for comparative negligence when it did not require Rizzo to show that Deputy Thompson acted with reckless disregard. We find no error and affirm.
 

 FACTS
 

 ¶ 2. On August 28, 2002, Deputy Thompson left the Bolivar County Sheriffs Department (“Sheriffs Department”) to assist another officer after the officer called for backup. The call for backup was canceled prior to the accident, but Deputy Thompson claimed that he did not hear the cancellation over the police radio. Deputy Thompson testified that his lights and sirens were activated at the time of the accident, but this was disputed by other witnesses.
 

 ¶ 3. While traveling east on Highway 8, Deputy Thompson encountered a heavy-duty pickup truck and Brown’s truck. Brown was acting within the course and scope of his employment with Rizzo at this time. Deputy Thompson checked the passing lane for oncoming traffic, accelerated to 65 or 70 miles per hour, by his estimation, and first attempted to overtake the heavy-duty pickup truck, and then Brown’s truck. Deputy Thompson claims that after he began to overtake the trucks, Brown began a left turn into Brown’s driveway. Brown claims that the passing lane was clear when he began his turn. Deputy Thompson’s car collided with Brown’s truck as Brown entered his driveway.
 

 ANALYSIS
 

 1. Did the trial court err when it denied Deputy Thompson’s motion for a directed verdict and a proposed jury instruction based on negligence per se?
 

 ¶ 4. Deputy Thompson argues that Brown violated Mississippi Code Annotated section 63-3-707 (Rev.2004); therefore, the trial court erred by denying his motion for a directed verdict and a jury proposed instruction that stated Brown was negligent per se. Rizzo claims that Brown did not violate section 63-3-707 and that Dep
 
 *455
 
 uty Thompson proximately caused the collision.
 

 ¶ 5. The supreme court has stated:
 

 Denials of peremptory instructions, motions for [a] directed verdict, and motions for judgment notwithstanding the verdict each challenge the legal sufficiency of the evidence presented at trial. They are, therefore, reviewed under the same standard.... Under this standard, [the appellate court] will consider the evidence in the light most favorable to the appellee, giving that party the benefit of all favorable inference that may be reasonably drawn from the evidence. If the facts so considered point so overwhelmingly in favor of the appellant that reasonable men could not have arrived at a contrary verdict, we are required to reverse and render. On the other hand if there is substantial evidence in support of the verdict, that is, evidence of such quality and weight that reasonable and fair minded jurors in the exercise of impartial judgement might have reached different conclusions, affirmance is required.
 

 Cmty. Bank, Ellisville, Miss. v. Courtney,
 
 884 So.2d 767, 772(¶ 9) (Miss.2004) (citations and quotations omitted).
 

 ¶ 6. The supreme court has defined negligence per se as a “breach of a statute or ordinance [that] renders the offender liable in tort without proof of a lack of due care.”
 
 Palmer v. Anderson Infirmary Benevolent Ass’n,
 
 656 So.2d 790, 796 (Miss.1995). “In order for the doctrine of negligence per se to apply, the plaintiff must show that he is a member of the class that the statute was designed to protect and that the harm he suffered was the type of harm which the statute was intended to prevent.”
 
 Thomas v. McDonald,
 
 667 So.2d 594, 597 (Miss.1995) (citations omitted). “When a statute is violated, the injured party is entitled to an instruction that the party violating is guilty of negligence, and if that negligence proximately caused or contributed to the injury, then the injured party is entitled to recover.”
 
 Id.
 
 at 596 (citations omitted).
 

 ¶ 7. Deputy Thompson argues that Brown was negligent per se because he violated section 63-3-707, which states in part:
 

 No person shall turn a vehicle from a direct course upon a highway unless and until such movement can be made with reasonable safety and then only after giving a clearly audible signal by sounding the horn if any pedestrian may be affected by such movement or after giving an appropriate signal in the manner provided in this article in the event any other vehicle may be affected by such movement.
 

 Deputy Thompson argues that if Brown had looked in his rearview or side mirror, as he commenced his left-hand turn, then he would have seen that Deputy Thompson and the heavy-duty pickup truck were behind him. Both parties agree that there are no hills or curves on the highway in this area.
 

 ¶ 8. Brown testified that he did look in the side mirror before he made his turn and that he did not see Deputy Thompson in the left-hand lane behind him; however, he could not remember if he saw the heavy-duty pickup truck behind him. Brown stated that he did not know how many seconds had elapsed between when he looked in his side mirror and made his turn, but that it all occurred in “one motion.”
 

 ¶ 9. Deputy Thompson’s expert, Brett Alexander, opined that Deputy Thompson would have been in the left-hand lane prior to Brown beginning his turn left. His opinion was based on his estimates of Deputy Thompson’s and Brown’s speeds and
 
 *456
 
 his estimate of the distance between them when Deputy Thompson began to pass the heavy-duty pickup truck. However, his opinion was not supported by any eyewitness testimony.
 

 ¶ 10. Jeffery West, a rural mail carrier, had pulled his vehicle onto the shoulder of the road and was re-entering the road as the accident occurred. West was traveling west toward Deputy Thompson and Brown. West was facing Brown and was able to see the accident as it occurred. He testified that he saw Brown with his blinker on, and out of nowhere, Deputy Thompson struck Brown. He stated that he could see only the heavy-duty pickup truck and Brown’s truck, until Deputy Thompson appeared right beside the heavy-duty pickup truck. West estimated that Deputy Thompson was going 85 miles per hour. West testified that Brown had begun his turn when West saw Deputy Thompson. West stated that he did not see Deputy Thompson’s blue lights activated at this time.
 

 ¶ 11. The driver of the heavy-duty pickup truck, Jerry Jackson, testified that Brown had signaled for the left turn, slowed down, and had begun his left turn when Deputy Thompson began to pass. Jackson also stated that he did not see Deputy Thompson’s blue lights on at this time.
 

 ¶ 12. Deputy Thompson argues that a motorist is “charged with seeing that which [he] should have seen.”
 
 Campbell v. Schmidt,
 
 195 So.2d 87, 89 (Miss.1967). In
 
 Campbell,
 
 the defendant admitted that she
 
 failed
 
 to look both ways before she proceeded through an intersection.
 
 Id.
 
 at 88. Here, Brown testified that he
 
 did
 
 look in his side mirror as he prepared to turn left and that he did not see Deputy Thompson. Brown’s testimony was supported by West who said that Brown had already begun his turn when West saw Deputy Thompson for the first time.
 

 ¶ 18. There was a factual dispute about whom initiated his move first, Brown or Deputy Thompson, and about what Brown should have seen given the differences in their speeds.
 
 [1]
 
 This was an issue for the jury to decide. Considering the evidence in the light most favorable to Rizzo, we conclude that the trial court properly denied both Deputy Thompson’s motion for a directed verdict and the proposed jury instruction based on negligence per se.
 

 2. Was the jury was biased?
 

 ¶ 14. Deputy Thompson claims that three jurors were not truthful during voir dire about whether they or a family member had previous contact with Deputy Thompson or other employees of the Sheriffs Department. Rizzo contends that Deputy Thompson did not prove that any of the three jurors failed to respond truthfully to relevant, direct, and unambiguous questions during voir dire as required under
 
 Odom v. State, 355
 
 So.2d 1381, 1383 (Miss.1978).
 

 ¶ 15. Where a prospective juror fails to respond to a question during voir dire, upon motion for a new trial, the trial court should determine whether the question was: “(1) relevant to the voir dire examination; (2) whether it was unambiguous; and (3) whether the juror had substantial knowledge of the information sought to be elicited.”
 
 Id.
 
 If so, “the court should then determine if prejudice to the defendant in selecting the jury reasonably could be inferred from the juror’s failure to respond.”
 
 Id.
 
 If prejudice could reasonably be inferred, then the trial court shall
 
 *457
 
 order a new trial.
 
 Id.
 
 A trial court’s judgment about whether a jury is fair and impartial will not be disturbed unless it appears clearly that it is wrong.
 
 Id.
 

 ¶ 16. During voir dire, the trial court asked the jurors if anyone knew any of the potential witnesses. Counsel for Deputy Thompson asked the potential jurors the following:
 

 Thinking back, has anyone thought about either yourself or a family member who might have been involved in an incident or a situation where Officer Thompson, either working alone or with someone else in Bolivar County, may have had to, for instance investigate you or your family member for some kind of alleged problem?
 

 A. Rachel Ramiz
 

 ¶ 17. During a post-trial hearing Ramiz acknowledged that she knew her sister, Jessica Ramiz, had been arrested once by the Sheriffs Department, but she denied knowing that Deputy Thompson was the arresting officer in March 2004. Deputy Thompson’s counsel asked Ramiz why she did not speak up during voir dire about this knowledge, and she replied that she only recalled being asked if she knew Deputy Thompson. Ramiz stated again that she did not know Deputy Thompson arrested her sister.
 

 ¶ 18. Ramiz also acknowledged that her cousin, Terry Ramiz, had been arrested, but she said she did not know whether he was arrested by the Sheriffs Department or the Rosedale Police Department. She knew he was held at the Bolivar County Correctional Facility. Ramiz denied knowing that Deputy Thompson investigated the allegations against Terry. She stated that she was not close to Terry and that she did not know why or when he was arrested. Deputy Thompson’s counsel asked Ramiz why she did not speak up during voir dire about this knowledge, and she replied that she must not have understood that she was being asked about a cousin’s arrest history.
 

 ¶ 19. Deputy Thompson argues that all arrests should have been disclosed in response to his question about whether potential jurors thought of a family member who might have been involved in an incident or a situation where Deputy Thompson, either working alone or with someone else in Bolivar County, may have investigated them. Juror Ramiz did not disclose the arrests of her relatives because she said she had no reason to associate them with Deputy Thompson.
 

 ¶ 20. During the post-trial hearing, Ramiz stated that she did not know Deputy Thompson was involved in her sister’s arrest two and a half years before this trial or that he had investigated her cousin. She did not even know what department had arrested her cousin. She did not have any personal knowledge about the details of her sister’s arrest. Based on her testimony at the hearing, the trial court correctly found that Ramiz lacked substantial knowledge of the information sought to be elicited, because she did not know of Deputy Thompson’s involvement in either of these incidents. Deputy Thompson should have specifically asked the question he apparently wanted answered — that being whether anyone had a family member that had been arrested or investigated by the Sheriff’s Department. This issue is without merit.
 

 B. Chedra Bolden
 

 ¶21. Chedra Bolden acknowledged that she knew her cousin, Centrea Bolden, had served time at the penitentiary, but she claimed that she was unaware that Centrea was arrested by one of Deputy Thompson’s witnesses, Chief Deputy Charles Gilmer.
 

 
 *458
 
 ¶ 22. Bolden also acknowledged that her cousin, Jacqueline Bolden, had been arrested. Bolden did not know when her cousin was arrested or what department had arrested her.
 

 ¶ 28. Deputy Thompson has not shown that Bolden answered any voir dire questions dishonestly. The trial court asked whether any of the potential jurors knew the potential witness Chief Deputy Gilmer. While Bolden did not know Chief Deputy Gilmer, unbeknownst to her, one of her cousins was arrested by him. Further, Deputy Thompson did not present any evidence of a situation in which he investigated or arrested Bolden or a member of her family. This issue is without merit.
 

 C. Leon Hollaman
 

 ¶ 24. Leon Hollaman was arrested for forgery by one of Deputy Thompson’s potential witnesses, Deputy Frazier Nash. Deputy Nash was not called as a witness during the trial. Hollaman had moved out of state after the trial but before the post-trial hearing; therefore, he was unable to be served with a subpoena. Accordingly, he was not present at the hearing concerning jury bias.
 

 ¶ 25. The trial court asked the potential jurors if anyone knew the potential witness Deputy Nash. The question was relevant to the voir dire examination and unambiguous, but Deputy Thompson fails to show that Hollaman had substantial knowledge of the information sought to be elicited. Hollaman was arrested by Deputy Nash in September 29, 2003, three years before this trial in September 2006. Deputy Nash did not testify at Deputy Thompson’s trial; therefore, Hollaman did not have an opportunity to recognize Deputy Nash. Deputy Thompson argues jury bias based upon Hollaman’s alleged recognition of Deputy Nash’s name from a single arrest that occurred three years prior to trial without any testimony by Hollaman to that effect. We find that Deputy Thompson did not show that Hollaman had substantial knowledge. This issue is without merit.
 

 3. Did the trial court apply an incorrect standard of care for comparative negligence when it did not require Rizzo to show that Deputy Thompson acted with reckless disregard?
 

 ¶ 26. Deputy Thompson argues that the trial court misapplied the law of comparative negligence and that Rizzo should be required to show that he acted with reckless disregard before comparative negligence would apply because of protections provided by the Mississippi Tort Claims Act (MTCA). Rizzo responds that the MTCA does not deprive a defendant of a simple-negligence defense when a police officer files a personal-injury suit.
 

 ¶ 27. “In matters that are questions of law, this Court employs a de novo standard of review and will only reverse for an erroneous interpretation or application of the law.”
 
 Morgan v. West,
 
 812 So.2d 987, 990(¶ 8) (Miss.2002).
 

 ¶28. Mississippi Code Annotated section 11—46—9(l)(c) (Supp.2008) provides that:
 

 (1) A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:
 

 [[Image here]]
 

 (c) Arising out of any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities relating to police or fire protection unless the employee acted in reckless disregard of the safety and well-being of any person not en
 
 *459
 
 gaged in criminal activity at the time of injury.
 

 This section would protect Deputy Thompson from liability in a suit by Brown against Deputy Thompson by requiring Brown to show that Deputy Thompson was acting in reckless disregard at the time of the injury. However, the question before this Court is what Rizzo must show when defending a personal-injury suit brought by Deputy Thompson.
 

 ¶ 29. Deputy Thompson argues that it was error to apportion any fault to him unless he acted with reckless disregard because section 11 — 46—9(l)(c) protects him from liability until his actions reach this level. We disagree.
 

 ¶ 30. Subsection ll-46-l(a) (Rev.2002) defines a claim as “any demand to recover damages from a
 
 governmental entity
 
 as compensation for injuries.” (Emphasis added). Here, Deputy Thompson’s suit against Rizzo — a non-governmental entity — is not a claim as defined under section 11-46-1. Therefore, Deputy Thompson is not afforded the protection provided by section 1146-9(l)(c).
 

 ¶ 31. Furthermore, the supreme court has recognized that in the context of Mississippi Code Annotated section 85-5-7 (Supp.2008) — which addresses joint and several liability for damages caused by two or more persons — that:
 

 Fault and liability are not synonyms. “Fault” is defined by § 85-5-7 as “an act or omission.” Immunity from liability does not prevent an immune party from acting or omitting to act. Rather, immunity shields that party from any liability stemming from that act or omission. There is nothing logically or legally inconsistent about allocating fault but shielding immune parties from liability for that fault. And there is no reason to imagine that the Legislature did not intend fault to be allocated against immune parties, insofar as that allocation can be of no detriment to those parties.
 

 Mack Trucks, Inc. v. Tackett,
 
 841 So.2d 1107, 1114(¶ 26) (Miss.2003). Subsection ll-46-9(l)(c) limits liability, not fault, when a plaintiff files suit against a governmental entity. We see no reason why it should prohibit the allocation of fault when an employee of the governmental entity files suit against a non-governmental entity-
 

 ¶32. The Legislature determined that it was necessary to protect governmental entities and their employees from liability for the “performance or execution of duties or activities relating to police or fire protection unless the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury.” Miss.Code Ann. § 11 — 46—9(l)(c). However, the Legislature has not burdened non-governmental entities and private persons with liability for personal injuries sustained by an employee of a governmental entity when that person’s actions fall somewhere in between simple negligence and the “reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury.” Miss.Code Ann. § 11 — 46—9(l)(e). We do not do so today. Accordingly, we affirm the ruling of the trial court.
 

 ¶ 33. THE JUDGMENT OF THE BOLIVAR COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR.
 

 [1]
 

 . Deputy Thompson was driving an estimated seventy to eighty-five miles per hour, while Deputy Thompson's expert estimated that Brown was traveling ten miles per hour.