Public Employee Labor Relations Board
No. 2000-191

APPEAL OF INTERNATIONAL BROTHERHOOD OF POLICE OFFICERS

(New Hampshire Public Employee Labor Relations Board)

Argued: November 7, 2001
Opinion Issued: August 12, 2002

*Morris & Phillips*, of Hampton (*Peter C. Phillips* on the brief and orally), for the petitioner.

*Sumner F. Kalman, Attorney at Law, P.C.*, of Plaistow (*Sumner F. Kalman* on the brief and orally), for the respondent, the Town of Atkinson.

*James F. Allmendinger*, of Concord, staff attorney, by brief, for NEA-New Hampshire, as *amicus curiae*.

*Kerry P. Steckowych & a.*, of Goffstown, by brief, for the New Hampshire Association of Chiefs of Police, Inc., as *amicus curiae*.

*Kevin P. Chisholm*, of Concord, staff attorney, by brief, for the New Hampshire Municipal Association, as *amicus curiae*.

BROCK, C.J. The petitioner, the International Brotherhood of Police Officers (IBPO), appeals a decision of the public employee labor relations board (PELRB) which dismissed an unfair labor practice charge after concluding that "probationary employees" are not entitled to protection under the Public Employee Labor Relations Act. *See* RSA chapter 273-A (1999 & Supp. 2001). We reverse and remand.

On October 5, 1999, the IBPO filed an unfair labor practice charge against the Town of Atkinson (town), alleging, among other things, that it had wrongfully terminated Michael Rivera's employment because of his union activity in violation of RSA 273-A:5, I(a), (b), (c) & (g) (1999). After conducting a hearing, the PELRB found that because Rivera had not completed twelve months of employment, he was a "probationary employee." *See* RSA 273-A:1, IX. Consequently, the PELRB dismissed the charge, finding that because he was still a probationary employee, Rivera

was not covered by the provisions of the Public Employee Labor Relations Act. This appeal followed.

The original complaint filed by the IBPO alleged violations of several provisions of RSA 273-A:5. On appeal, however, the IBPO limits its argument to the provision of RSA 273-A:5, I(c), which prohibits discrimination in hiring and tenure for the purpose of encouraging or discouraging membership in any employee organization.

The applicable standard of review in this case is provided by RSA 541:13 (1997), which authorizes our review of agency decisions for errors of law. *See Appeal of House Legislative Facilities Subcom.*, 141 N.H. 443, 445 (1996). We presume the PELRB's findings of fact to be "lawful and reasonable." RSA 541:13. We act as the final arbiter of the meaning of the statute, however, and will set aside erroneous rulings of law. *See Appeal of Inter-Lakes Sch. Bd.*, 147 N.H. 28, 31 (2001).

RSA 273-A:5, I(c) prohibits public employers from "discriminat[ing] in the hiring or tenure, or the terms and conditions of employment of its employees for the purpose of encouraging or discouraging membership in any employee organization." RSA chapter 273-A contains no definition of "employee"; RSA 273-A:1, IX (Supp. 2001), however, defines "public employee" and excludes "[p]ersons in a probationary or temporary status" from the definition.

The town contends that because the Public Employee Labor Relations Act specifically excludes probationary employees from the definition of public employees, RSA 273-A:5 provides no protection in their hiring or tenure. The town asserts that the word "employee" is merely an abbreviated form of "public employee" and thus, by definition, does not include probationary employees. We disagree.

In *Appeal of Town of Conway*, 121 N.H. 372 (1981), we considered the process used by the PELRB in certifying a bargaining unit under RSA 273-A:8, I, which referred to "employees" rather than "public employees." Reviewing the entire statutory scheme, we concluded that the definition of "public employee" was applicable to the word "employee" used in RSA 273-A:8, I, stating: "Words used with plain meaning in one part of a statute are to be given the same meaning in other parts of the statute unless a contrary intention is clearly shown." *Id.* at 373 (ellipses and brackets omitted).

We conclude that a "contrary intention" is clearly shown by the language of RSA 273-A:5, I(c). That section prohibits public employers from discriminating in, among other things, the hiring of employees for the purpose of discouraging membership in any union. The definition of "hire" is "to engage the personal services of for a fixed sum: employ for wages

...." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1072 (unabridged ed. 1961); *see* RSA 21:2 (2000) (words used in statutes are to be construed according to common and approved usage of language). Usually, a person applying to be hired by a public employer will not already be a "public employee." Therefore, we conclude that the legislature intended to prohibit a public employer from refusing to hire an applicant on account of the applicant's union views or activities, despite the fact that an applicant is not a "public employee." *Cf. Appeal of City of Nashua Bd. of Educ.*, 141 N.H. 768, 771 (1997) (indicating that discriminatory hiring policy would raise serious issues of unfair labor practices). Thus, the prohibition in RSA 273-A:5, I(c) extends beyond discrimination by a public employer against "public employees." We hold that subsection I(c) prohibits discrimination against probationary employees as well.

Our reading of the statute is consistent with the purpose of the Public Employee Labor Relations Act. The Act was established in 1975 "to foster harmonious and cooperative relations between public employers and their employees ...." Laws 1975, 490:1. In establishing the PELRB, the legislature recognized the "right of public employees to organize and to be represented for the purpose of bargaining collectively with the state or any political subdivision thereof ...." Laws 1975, 490:1, I. Allowing a public employer to discriminate in the hiring or tenure, or the terms and conditions of employment of probationary employees for the purpose of discouraging union membership would undermine the Act's goal of fostering harmonious cooperative relations between public employers and their employees. The dissent would construe the statute narrowly to exclude probationary employees from its protection. We believe such a construction, allowing such discrimination against probationary employees, might well deter public employees from exercising their right to organize and be represented for the purpose of bargaining collectively.

We are cognizant that our task is to construe the statute in accordance with legislative intent. If the legislature believes that unintended consequences have beset its statutory language, we would respectfully urge it to clarify the statute to remove any uncertainty. *See Lord v. Lovett*, 146 N.H. 232, 242 (2001) (Broderick, J., concurring).

Because we conclude that RSA 273-A:5, I(c) prohibits a public employer from discriminating in the hiring or tenure, or the terms and conditions of employment of its probationary employees for the purpose of encouraging or discouraging membership in any employee organization, we reverse the dismissal of the unfair labor practice charges brought by the petitioner as

they refer to Rivera. We remand for further proceedings consistent with this opinion.

*Reversed and remanded.*

BRODERICK and DUGGAN, JJ., concurred; NADEAU, J., with whom DALIANIS, J., joined, dissented.

NADEAU, J., dissenting. The language of RSA 273-A:1, IX is plain and unambiguous. It defines "public employee" and "expressly excludes 'persons in a probationary or temporary status' from the definition." *Appeal of Town of Conway*, 121 N.H. 372, 373 (1981).

I agree with the town that because the Public Employee Labor Relations Act specifically excludes probationary employees from the definition of public employees, RSA 273-A:5 provides no protection in their hiring or tenure. The word "employee" is merely an abbreviated form of "public employee" and thus, by definition, does not include probationary employees.

The PELRB was established in 1975 "to foster harmonious and cooperative relations between public employers and their employees." Laws 1975, 490:1. In establishing the PELRB, the legislature recognized the "right of public employees to organize and to be represented for the purpose of bargaining collectively with the state or any political subdivision thereof . . . ." Laws 1975, 490:1, I.

I disagree with the IBPO's contention that the use of "employee" in certain provisions of RSA 273-A:5, I, and "public employee" in others indicates a legislative intention to address issues concerning two separate classes of employees. The Public Employee Labor Relations Act's statement of purpose, as well as other provisions within the act, uses the terms "employee" and "public employee" interchangeably. *See, e.g.*, RSA 273-A:1, VIII, :8, :10, :11. The PELRB's title, however, coupled with the definition of "public employee" set forth in RSA 273-A:1, IX, is indicative of the legislature's intent to limit the jurisdiction of the PELRB, excluding from it, among other things, probationary employees.

The IBPO's argument that the language of RSA 273-A:5, I(c) must apply to probationary employees because it addresses "hiring" and "tenure" does not change this conclusion. The definition of "public employee" provides that no employee with an individual contract shall be determined to be probationary, "nor shall any employee be determined to be in a temporary status solely by reason of the source of funding of [his or her] position . . . ." RSA 273-A:1, IX(d). Given the various types of positions which may fall within the PELRB's jurisdiction and the potential for public employees to move within them or between various public

employers at both the local and State level, I do not believe the use of the term "hiring" in RSA 273-A:5, I(c) implies a legislative intent to expand the jurisdiction of the PELRB.

The conclusion that probationary employees are not covered by the Public Employee Labor Relations Act is supported by our earlier decision in *Appeal of Town of Conway*, 121 N.H. 372. That case addressed the process used by the PELRB in certifying a bargaining unit under RSA 273-A:8, I, which referred to "employees" rather than "public employees." Reviewing the entire statutory scheme, we concluded that the definition of "public employee" applied to the word "employee" used in RSA 273-A:8, I, stating that "[w]ords used with plain meaning in one part of a statute are to be given the same meaning in other parts of the statute, unless a contrary intention is clearly shown." *Id.* at 373 (ellipses and brackets omitted). We therefore held that probationary employees could not be included when determining whether a bargaining unit could be certified. *Id.*

Although the legislature amended RSA 273-A:8, I, two years later, "the legislative modifications do not indicate any intent to disturb the earlier statutory interpretations . . . ." *Petition of Correia*, 128 N.H. 717, 720 (1986). The amendment neither defined nor changed the reference to "employees." *See* Laws 1983, 270:2. It also conveyed no rights to probationary employees. *See id.* Instead, it clarified that while the positions of probationary employees could be counted for purposes of certifying a bargaining unit, probationary employees could not vote in any certification election. *See id.* The legislature is presumed to have known of the narrow construction we had previously given the term "employee." *See Petition of CIGNA Healthcare*, 146 N.H. 683, 690 (2001). Had it disagreed with our construction, the legislature could have amended the chapter to reflect that disagreement. I would not usurp that prerogative now by expanding the definition we have previously given to the word "employee" when used in the Public Employee Labor Relations Act.

For these reasons, respectfully, I dissent.

DALIANIS, J., joins in the dissent.