Hillsborough-southern judicial district
No. 2010-157

## ALFRED OCASIO

v.

## FEDERAL EXPRESS CORPORATION

Argued: April 13, 2011
Opinion Issued: September 22, 2011

438

*Winer and Bennett, LLP*, of Nashua (*Peter G. Webb* on the brief, and *John V. Dwyer, Jr.* orally), for the plaintiff.

*Desmarais, Ewing & Johnston, PLLC*, of Manchester (*David Johnston* and *Heather G. Silverstein* on the brief, and *Mr. Johnston* orally), for the defendant.

CONBOY, J. In this personal injury case, the plaintiff, Alfred Ocasio, appeals the entry of judgment in favor of the defendant, Federal Express Corporation (FedEx). He argues that the Trial Court (*Barry*, J.) erred when it allowed the jury to apportion fault to his employer, the United States Postal Service (USPS), and when, despite the jury's $1,445,700 verdict in his favor, it entered judgment for FedEx after comparing the fault allocated to him to the fault allocated to FedEx. *See* RSA 507:7-d, :7-e (2010). We hold that while it was not error to allow the jury to apportion fault to the USPS, it was error to deny the plaintiff any recovery against FedEx. We, thus, affirm in part, reverse in part, and remand.

## I. Background

### A. The Accident

The jury could have found the following facts. The plaintiff was a mail handler for the USPS. His job included pulling, by hand, large canisters filled with mail (air cans) from delivery tractor-trailer trucks. Ball bearings were affixed to the floor of the truck beds, as well as the floor of the loading dock, allowing the USPS employees to roll the air cans from the trucks onto the loading dock and into the USPS facility. The air cans typically weigh between 3,000 and 5,000 pounds.

On February 17, 2002, the plaintiff was pulling air cans from a FedEx tractor-trailer truck when he accidentally stepped into and caught his leg in a gap between the rear of the truck and the loading dock. When the air can he had been pulling continued to roll toward him, the bones of his trapped leg were shattered. Although the plaintiff's leg was saved after reconstruc-

tive surgery, it is of limited use. He cannot stand or walk for very long and he cannot lift and carry heavy things. He has since lost his job at the USPS.

### B. Recovery Against USPS

Due to his work-related accident, the plaintiff received benefits totaling approximately $80,353 under the Federal Employees' Compensation Act (the Federal Act). *See* 5 U.S.C.A. §§ 8101 *et seq.* (2007). Pursuant to the Federal Act, these benefits are the plaintiff's exclusive remedy against the USPS. *See* 5 U.S.C.A. § 8116(c). Moreover, the Federal Act requires the plaintiff to refund to the United States any money he receives as a result of a suit or settlement from a third party, less costs of the suit and a reasonable attorney's fee, *see* 5 U.S.C.A. § 8132; *see also* 20 C.F.R. § 10.711 (2010), or to "assign to the United States any right of action he may have to enforce the liability or any right he may have to share in money or other property received in satisfaction of that liability," 5 U.S.C.A. § 8131(a)(1).

### C. Lawsuit Against FedEx

The plaintiff sued FedEx for damages, alleging, among other claims, that FedEx's negligence caused his injuries. Consistent with the Federal Act, the plaintiff did not name as a defendant the USPS, his immune employer. Before trial, the plaintiff moved *in limine* to preclude the jury from apportioning fault for his injuries to the USPS, arguing that if the jury were to do so, he "would essentially be punished for receiving benefits from his negligent employer." He explained: "Since any recovery [he] . . . might receive is already bound to be diminished by a worker's compensation lien, . . . it is unfair to additionally reduce that recovery by imputing separate, independent liability upon his employer." The trial court denied the motion, and gave the jury a special verdict form requiring it to consider whether the USPS was legally at fault to any degree.

The jury found the plaintiff's damages to be $1,445,700, and found that the plaintiff was six percent at fault, FedEx was four percent at fault, and the USPS was ninety percent at fault. Thereafter, FedEx moved for entry of judgment in its favor, arguing that pursuant to RSA 507:7-d, because the plaintiff's percentage of fault (6%) was greater than FedEx's percentage of fault (4%), the plaintiff was not entitled to recover any damages against FedEx. *See* RSA 507:7-d, :7-e, I(b). The trial court agreed, and this appeal followed.

## II. Discussion

On appeal, the plaintiff argues that the trial court erred in two respects: first, when it allowed the jury to apportion fault to the USPS, *see* RSA

507:7-e, I(a), even though the USPS was not named as a defendant in the lawsuit and was immune from liability pursuant to the Federal Act, *see* 5 U.S.C.A. § 8116(c); and, second, when it ruled that recovery against FedEx was barred because his degree of fault was found to be greater than FedEx's, *see* RSA 507:7-d, :7-e, I(b).

### A. Apportionment of Fault

#### 1. DeBenedetto

RSA 507:7-e governs apportionment of fault to both claimants and tortfeasors. It is part of a comprehensive statutory framework for apportionment of liability and contribution. *DeBenedetto v. CLD Consulting Eng'rs*, 153 N.H. 793, 798 (2006). It provides, in pertinent parts:

I. In all actions, the court shall:

(a) Instruct the jury to determine, or if there is no jury shall find, the amount of damages to be awarded to each claimant and against each defendant in accordance with the proportionate fault of each of the parties; and

(b) Enter judgment against each party liable on the basis of the rules of joint and several liability, except that if any party shall be less than 50 percent at fault, then that party's liability shall be several and not joint and he shall be liable only for the damages attributable to him.

RSA 507:7-e, I(a), (b).

In *DeBenedetto*, we ruled that RSA 507:7-e permits a jury to apportion fault to an immune non-party, such as the USPS. *DeBenedetto*, 153 N.H. at 804. At issue in *DeBenedetto* was whether the trial court erred when it instructed the jury to apportion fault to two non-parties. *Id.* at 797. One non-party, Doris Christous, was the driver of the car that collided with the plaintiff's husband's car. *Id.* at 795. Christous's insurance carrier paid damages upon demand and Christous was not named as a defendant in the plaintiff's subsequent lawsuit. *Id.* The other non-party was the New Hampshire Department of Transportation (DOT), which was a named defendant, but was dismissed before trial on grounds of immunity. *Id.*

The *DeBenedetto* plaintiff argued that the trial court's instruction to the jury to include Christous and the DOT when apportioning fault violated the plain language of RSA 507:7-e, I(a). *Id.* at 797. The plaintiff asserted that the words "party" or "parties," as used in RSA 507:7-e, I, referred only to

the parties actually involved in the case. *DeBenedetto*, 153 N.H. at 800. We disagreed, and construed the terms to refer to all entities contributing to the plaintiff's loss, including unnamed and immune non-parties. *Id.* at 798, 803.

The plaintiff in this case argues that our holding in *DeBenedetto* should not apply to the USPS even though it, like the DOT in *DeBenedetto*, is an immune non-party who contributed to the plaintiff's loss. In addressing his arguments, we begin by reviewing the legislative history of RSA 507:7-e, as related in our prior cases, as well as our case law interpreting the statute.

### 2. Legislative History of RSA 507:7-e and Prior Case Law

RSA 507:7-e was enacted in 1986 as part of the legislature's "unified and comprehensive approach to comparative fault, apportionment of damages, and contribution." *Jaswell Drill Corp. v. General Motors Corp.*, 129 N.H. 341, 344-45 (1987). "The 'Act Relative to Tort Reform and Insurance,' Laws 1986, 227:2, closely modeled the Uniform Comparative Fault Act, 12 U.L.A. 38-49 (Supp. 1987), in its treatment of comparative fault and apportionment of damages." *DeBenedetto*, 153 N.H. at 798. As originally enacted in 1986, RSA 507:7-e required that judgment be entered against "each party liable" on the basis of joint and several liability. *Id.*; *see* Laws 1986, 227:2. Under the rule of joint and several liability, a defendant who is only minimally responsible for a plaintiff's injuries may be held responsible for the entire amount of recoverable damages. *DeBenedetto*, 153 N.H. at 798.

The joint and several liability rule enabled "injured plaintiffs to seek out and sue only 'deep pocket' defendants — tortfeasors with significant assets but a potentially low degree of fault who by virtue of joint and several liability may be responsible for the entire amount of recoverable damages." *Id.* at 798-99. As a result, numerous jurisdictions enacted legislation to ameliorate the inequities suffered by low fault, "deep pocket" defendants. *Id.* at 799.

New Hampshire followed this trend in 1989 when it amended RSA 507:7-e "to treat fairly those entities which may be unfairly treated" under joint and several liability. *Id.* (quotation omitted); *see* N.H.S. JOUR. 286 (1989). Recognizing that "manufacturers, professional and public agencies . . . become targets for damage recoveries because of their potential monetary resources rather than their fault," N.H.S. JOUR. 286 (1989), the legislature amended RSA 507:7-e to impose only several liability on parties who are less than fifty percent at fault. *See* RSA 507:7-e, I(b).

Following this amendment, we had occasion to consider whether RSA 507:7-e permits a jury to apportion fault between a settling tortfeasor and a non-settling tortfeasor. *See Nilsson v. Bierman*, 150 N.H. 393, 395 (2003). In *Nilsson*, the plaintiff argued that the plain and ordinary meaning of the

word "party," as used in RSA 507:7-e, did not include a defendant who settled with the plaintiff before trial. *Id.* at 396. We disagreed, holding that for apportionment purposes, the word "party" refers to "parties to an action including settling parties." *Id.* (quotation and ellipsis omitted). We affirmed the trial court's verdict apportioning ninety-nine percent of fault to the settling defendant and one percent of fault to the non-settling defendant. *Id.* at 394.

In *Nilsson*, we expressly declined to reach the issue of whether an immune tortfeasor was a "party" for apportionment purposes. *Id.* at 397. Relying upon the reasoning of courts in jurisdictions with comparative fault and apportionment schemes similar to ours, we answered this question in the affirmative in *DeBenedetto*. *See DeBenedetto*, 153 N.H. at 800-04. Our decision in *DeBenedetto* was guided by the policy choice the legislature made when it amended RSA 507:7-e in 1989 to require joint and several liability only for those defendants who are fifty percent or more at fault. *Id.* at 799. Specifically, we recognized that "true apportionment cannot be achieved unless that apportionment includes all tortfeasors who are causally negligent by either causing or contributing to the occurrence in question, whether or not they are named parties to the case." *Id.* at 800. Therefore, we held that "for apportionment purposes under RSA 507:7-e, the word 'party' refers not only to parties to an action, including settling parties, but to all parties contributing to the occurrence giving rise to an action, including those immune from liability or otherwise not before the court." *Id.* at 804 (quotation, citation and ellipsis omitted). We concluded "that a rule of law limiting a jury or court to consideration of the fault of only the parties to an action would directly undermine the New Hampshire legislature's decision to assign only several liability to those parties who are less than 50 percent at fault." *Id.* at 803. We have applied *DeBenedetto* in subsequent cases. *See Everitt v. Gen. Elec. Co.*, 156 N.H. 202 (2007); *Goudreault v. Kleeman*, 158 N.H. 236 (2009).

The legislature's response to *DeBenedetto*, although not controlling, is instructive. *See Franklin v. Town of Newport*, 151 N.H. 508, 512 (2004) (subsequent legislative history, while not controlling, may be considered). In 2007, the legislature passed a bill that would have amended RSA 507:7-e to define the word "party" to mean only those who were before the court when damages were to be apportioned. *See* N.H.S. JOUR. 1832-33 (2007); N.H.H.R. JOUR. 113 (2007). The Governor vetoed this legislation, however, and his veto was sustained. *See* N.H.H.R. JOUR. 1113, 1115 (2007).

In 2009 and 2010, legislation was introduced to accomplish the same goal. *See* N.H.H.R. REP. 875-76 (2009); N.H.H.R. REP. 1145 (2010). The 2009 measure would have amended RSA 507:7-e to add a new paragraph under

which fault could be apportioned "only against parties to an action who are before the court." House Bill 197 (2009). The 2010 measure would have specifically exempted immune entities from apportionment of damages. House Bill 1255 (2010). Neither measure was passed by the New Hampshire House of Representatives, *see* N.H.H.R. REP. 876 (2009); N.H.H.R. REP. 1145 (2010), further evidencing the legislature's intent that RSA 507:7-e apply to immune non-parties as we held in *DeBenedetto*.

The failure of the 2009 legislation also reveals the legislature's specific intent that RSA 507:7-e applies to immune employers. *See* N.H.H.R. REP. 875-76 (2009). As amended by a legislative committee, the 2009 bill would have "except[ed] the amount of damages attributed to the employer pursuant to the apportionment of damages provisions under RSA 507:7-e from the employer's lien on damages and benefits recovered from third persons by employees who have received workers' compensation." *Id.* at 876. Representative William L. O'Brien, speaking on behalf of those opposed to the amendment, explained:

> The change proposed by this amended legislation would violate a fundamental premise of workers compensation law. It would do this by essentially taking away the employers' present immunity from lawsuits given in exchange for the employers having to pay set benefits for lost wages and medical costs for all workplace injuries, even when the employer is not negligent, and with the understanding that the employers' insurers will get back those payments if a third party's negligence caused the accident.

*Id.* Another legislator attempted to amend the legislation to exempt immune employers from apportionment under RSA 507:7-e. *Id.* This amendment failed and the entire measure was "laid on the table," with no further action taken. *Id.*

### 3. Whether DeBenedetto Applies to USPS

Against this backdrop, we now consider the plaintiff's arguments as to why *DeBenedetto* should not govern this case. The plaintiff does *not* argue that we should overrule *DeBenedetto*; rather, in effect, he seeks an exception to the holding in *DeBenedetto* that liability may be apportioned to immune non-parties.

### a. Whether Immune Employers Should Be Treated Differently

The plaintiff first argues that immune employers are different from other immune tortfeasors and, thus, different rules should govern apportioning fault to them. He observes that immune employers, unlike other immune

tortfeasors, have a statutory right to reimbursement from a plaintiff's recovery against another tortfeasor equal to the amount of benefits the employee received under the applicable workers' compensation law. *See* 5 U.S.C.A. § 8132; *see also* RSA 281-A:13, I(b) (2010) (under New Hampshire Workers' Compensation Law, employers have a lien on damages recovered by employee, less expenses and costs of action). He also notes that both the Federal Act and the New Hampshire Workers' Compensation Law (the State Act) allow and, under certain circumstances, require an employee to bring an action against a third party to recover damages. *See* 5 U.S.C.A. § 8132; *see also* RSA 281-A:13. Because of these statutory provisions, he asserts that allowing a jury to apportion fault to immune employers upsets the delicate balance of benefits and burdens under workers' compensation laws.

■ We disagree that apportioning fault to immune employers affects in any way the benefits and burdens under either the Federal or State Act. Both acts are based upon the fundamental *quid pro quo* of employer tort immunity in exchange for no-fault workers' compensation benefits. *See Tothill v. Estate of Center*, 152 N.H. 389, 395 (2005) (discussing State Act); *Lockheed Aircraft Corp. v. United States*, 460 U.S. 190, 193-94 (1983). Under both acts, "employees are guaranteed the right to receive immediate, fixed benefits, regardless of fault and without need for litigation, but in return they lose the right to sue [their employer]." *Lockheed Aircraft Corp.*, 460 U.S. at 194; *see Bilodeau v. Oliver Stores, Inc.*, 116 N.H. 83, 86 (1976).

Allocating fault to an immune employer does not disturb this *quid pro quo* relationship between employee and employer or the legislative policy underlying it. A plaintiff may still obtain benefits, without having to prove the employer's negligence, and the employer is still immune from liability. Indeed, "[t]o immunize employers from fault allocation in third-party tort suits would go against the spirit of the bargain between employers and employees." *Mack Trucks, Inc. v. Tackett*, 841 So. 2d 1107, 1115 (Miss. 2003). As pointed out by the Mississippi Supreme Court, if employers were immune from fault allocation, "the third party would pay the employer's cost of compensation, and the employee would have the possibility of recovering in tort for his employer's fault, since that would then be allocated to the third party." *Id.* "This certainly would benefit employers, and to some extent plaintiffs — *but third parties should not be assessed to supplement our system of workers' compensation*." *Id.* (emphasis added).

■ Contrary to the plaintiff's assertions, allocating fault to an employer does not destroy, or even affect, the employer's immunity from suit. Immunity "does not mean that a party is not at fault; it simply means that the party cannot be sued." *Pinnacle Bank v. Villa*, 100 P.3d 1287, 1293

(Wyo. 2004). Nor does it affect an employee's right to proceed against a third party. *See Bilodeau*, 116 N.H. at 87 (employee may proceed against a third party "based on the concept that the ultimate loss from wrongdoing should fall upon the wrongdoer").

The plaintiff's arguments are based upon his mistaken assumption that his statutory right to bring a third party action is intended to afford him full recovery for his injuries. To the contrary, under the State Act, the employee's right to bring a third party action and the corresponding right of the employer to be reimbursed from any recovery for the amount of compensation benefits paid accomplish the legislative purpose of precluding "double recovery." *See Rooney v. Fireman's Fund Ins. Co.*, 138 N.H. 637, 640-41 (1994). Thus, an injured worker "should not be allowed to keep the entire amount of both his compensation award and his common law recovery which would amount to a double recovery." *Bilodeau*, 116 N.H. at 87. The purpose of analogous provisions in the Federal Act is not only to prevent double recoveries, but also to minimize the cost of the program to the federal government. *United States v. Lorenzetti*, 467 U.S. 167, 177 (1984).

We are not persuaded that "fairness" dictates that a non-employer defendant, such as FedEx in this case, should be responsible for paying a plaintiff's entire damage award, particularly when the non-employer is only minimally at fault and the immune employer is nearly completely at fault. As we observed in *DeBenedetto*, "[t]here is nothing inherently fair about a defendant who is 10% at fault paying 100% of the loss, and there is no social policy that should compel defendants to pay more than their fair share of the loss." *DeBenedetto*, 153 N.H. at 800 (quotation omitted).

■ More importantly, requiring FedEx to bear the entire cost of the plaintiff's damages would contravene the legislative intent of RSA 507:7-e, which "is to protect minimally liable defendants." *Rodgers v. Colby's Ol' Place*, 148 N.H. 41, 44 (2002). "[T]he legislative history of RSA 507:7-e plainly demonstrates that an underlying purpose of the 1989 amendment was to relieve defendants involved in personal injury lawsuits from damages exceeding their percentage of actual fault." *DeBenedetto*, 153 N.H. at 807. "Specifically, the legislature sought to alleviate the burden imposed by joint and several liability upon 'deep pocket' defendants targeted because of their financial resources rather than their degree of culpability." *Id.* "[T]o balance the interests of injured plaintiffs with those of defendants bearing relatively low fault percentages," the legislature "reserved the joint and several liability rule for application to tortfeasors fifty percent or more at fault." *Id.*

To the extent that the plaintiff relies upon Tennessee law to argue that immune employers should be exempt from apportionment under RSA 507:7-e, his reliance is misplaced. Although we cited a Tennessee case in *Nilsson* and *DeBenedetto, see Carroll v. Whitney*, 29 S.W.3d 14, 21 (Tenn. 2000), it was in support of the observation that many jurisdictions allow apportionment to non-parties and that to apportion fault to non-parties is compatible with the doctrine of comparative fault. *See Nilsson*, 150 N.H. at 396; *DeBenedetto*, 153 N.H. at 800. Indeed, in *DeBenedetto*, 153 N.H. at 800, 801, we cited with approval two cases that stand for the proposition that all immune parties, including employers, must be subject to apportionment of fault. *See Mack Trucks, Inc.*, 841 So. 2d at 1115; *Northland Ins. Co. v. Truckstops Corp. of America*, 914 F. Supp. 216, 220 (N.D. Ill. 1995) (failure to include immune employers in apportionment process violates main purpose of comparative fault by subjecting defendants to liability in excess of their proportion of fault).

Thus, contrary to the plaintiff's assertion, we do not conclude that immune employers should be treated differently than other immune tortfeasors.

### b. Constitutional Claims

The plaintiff next contends that apportioning fault to the USPS violated various of his state constitutional rights. First, he argues that including the USPS in the apportionment of fault violated his due process rights under Part I, Article 15 of the New Hampshire Constitution. FedEx argues that the plaintiff has failed to preserve this claim for our review. We assume, without deciding, that it was preserved, and address its merits.

The plaintiff argues that applying the apportionment of damages statute to immune employers impermissibly reallocates the benefits and burdens under workers' compensation laws. His argument is based upon a line of cases addressing the constitutionality of amendments to the State Act. *See, e.g., Young v. Prevue Products, Inc.*, 130 N.H. 84, 86-88 (1987) (amendment barring loss of consortium actions against employer by employee's spouse was constitutional); *Rooney v. Fireman's Fund Ins. Co.*, 138 N.H. 637, 642-43 (1994) (upholding constitutionality of amendment allowing employer's insurer a lien on claimant's uninsured motorist benefits). In these cases, we held that "there need not be a specific 'give and take,' or *quid pro quo*, each time a workers' compensation statute is amended." *Rooney*, 138 N.H. at 642. Instead, to determine whether the Due Process Clause of the State Constitution has been violated, we consider "the totality of the benefits" allowed under the State Act, and the "fairness of the compensation scheme as a whole." *Id.* (quotations omitted).

■ The plaintiff's reliance upon this line of cases is misplaced. The instant matter does not concern the legislature's adjustment of benefits and burdens under the State Act through its amendment. More importantly, as previously noted, apportioning fault to immune employers does not disturb the balance of benefits and burdens under workers' compensation laws. Thus, apportioning fault to an immune employer pursuant to RSA 507:7-e does not violate the due process protection of the New Hampshire Constitution. *See id.*

■ The plaintiff next asserts that apportioning fault to the USPS violated his right to equal protection under Part I, Articles 2 and 12 of the New Hampshire Constitution. The plaintiff argues that RSA 507:7-e, I, "causes [injured workers] . . . to be treated differently from other injury victims." Relying upon an equal protection test that we have overruled, *see Carson v. Maurer*, 120 N.H. 925, 932 (1980), *overruled by Cmty. Res. for Justice v. City of Manchester*, 154 N.H. 748 (2007), the plaintiff articulates an equal protection argument that is nearly identical to his third constitutional argument, which he raises under Part I, Article 14 of the State Constitution. Because he makes no argument under the equal protection test we currently use, *see Cmty. Res. for Justice*, 154 N.H. at 762, we address only his argument under Part I, Article 14.

> Part 1, Article 14 of the New Hampshire Constitution provides: Every subject of this state is entitled to a certain remedy, by having recourse to the laws, for all injuries he may receive in his person, property, or character; to obtain right and justice freely, without being obliged to purchase it; completely, and without any denial; promptly, and without delay; conformably to the laws.

N.H. CONST. pt. I, art. 14. The purpose of this provision is to make civil remedies available and to guard against arbitrary and discriminatory infringements upon access to courts. *DeBenedetto*, 153 N.H. at 805.

■ The plaintiff argues that RSA 507-7:e, as applied to injured workers, eliminates the right to a remedy guaranteed under our constitution. We disagree. Contrary to his assertions, Part I, Article 14 "does *not* guarantee that all injured persons will receive full compensation for their injuries." *Id.* (emphasis added); *see Estate of Cargill v. City of Rochester*, 119 N.H. 661, 665 (1979). It only requires a remedy that conforms to the statutory and common law rights applicable at the time of the injury. *Trovato v. Deveau*, 143 N.H. 523, 525 (1999). RSA 507:7-e, as applied to injured workers, does not restrict the statutory or common law rights available to injured employees. An injured employee maintains the right to obtain workers'

compensation benefits under either the Federal or State Act and to bring common law claims against third party defendants.

■ We rejected a similar claim in *DeBenedetto*. There, we concluded that apportioning fault to immune non-parties does not violate Part I, Article 14 because it does not "by its language, restrict a plaintiff's right to seek a remedy for personal injuries, limit a plaintiff's ability to bring an action against any party, or cap the amount of damages that a plaintiff may seek." *DeBenedetto*, 153 N.H. at 805. Here, the plaintiff, like the plaintiff in *DeBenedetto*, is unable to recover from an immune non-party — his employer. However, he is not prevented from doing what he has done herein, which is to bring suit against a third party defendant who bears responsibility for his injuries. He has not been deprived of his right to a remedy under the New Hampshire Constitution.

The plaintiff's final constitutional argument is that the application of RSA 507:7-e in this case violated the Supremacy Clause. The Supremacy Clause of Article VI of the Federal Constitution gives Congress the power to preempt state law. *New Hampshire Health Care Assoc. v. Governor*, 161 N.H. 378, 399 (2011). "Under the Supremacy Clause of the Federal Constitution, state law is preempted where: (1) Congress expresses an intent to displace state law; (2) Congress implicitly supplants state law by granting exclusive regulatory power in a particular field to the federal government; or (3) state and federal law actually conflict." *Id.* (quotation omitted). "An actual conflict exists when it is impossible for a private party to comply with both state and federal requirements or where state law stands as an obstacle to the accomplishments and execution of the full purpose and objective of Congress." *Id.* (quotation omitted).

The plaintiff contends that "[t]he invocation of employer fault on the basis of a state statute would contradict the clear employer immunity created in the . . . federal statute" and would "undermine" the statutory right "of federal workers to third party actions and the federal government's right to be reimbursed for worker's compensation benefits paid out of any third party recovery." Although the plaintiff couches his arguments as arising under the Supremacy Clause, he merely reiterates arguments that we have already addressed.

## B. Comparative Fault

The plaintiff's second claim of error concerns the trial court's failure to award him any recovery against FedEx after it compared his percentage of fault to FedEx's percentage of fault pursuant to RSA 507:7-d, the comparative fault statute. We review the trial court's construction of RSA 507:7-d *de novo. See Kenison v. Dubois*, 152 N.H. 448, 451 (2005).

RSA 507:7-d states:

> Contributory fault shall not bar recovery in an action by any plaintiff or plaintiff's legal representative, to recover damages in tort for death, personal injury or property damage, if such fault was not greater than the fault of the *defendant,* or the *defendants in the aggregate if recovery is allowed against more than one defendant,* but the damages awarded shall be diminished in proportion to the amount of fault attributed to the plaintiff by general verdict. The burden of proof as to the existence or amount of fault attributable to a *party* shall rest upon the party making such allegation.

(Emphases added.)

The trial court reasoned that recovery was not permitted against the USPS due to its status as an immune party, and therefore that the USPS's fault could not be aggregated with FedEx's fault. Accordingly, because the jury determined FedEx's fault to be four percent and the plaintiff's to be six percent (and, thus, greater than FedEx's fault), the trial court entered judgment on FedEx's behalf. This was error.

■ Generally, when construing statutes we first examine the language used, and, where possible, we ascribe the plain and ordinary meanings to words used. *In re Keelin B.,* 162 N.H. 38, 42 (2011). Nevertheless, we interpret statutes in the context of the overall statutory scheme and not in isolation. *Appeal of Wilson,* 161 N.H. 659, 662 (2011). "In so doing, we are better able to discern the legislature's intent, and therefore better able to understand the statutory language in light of the policy sought to be advanced by the entire statutory scheme." *Id.* (quotation omitted). We will not interpret a statute to effectuate an unjust result. *See In re Alex C.,* 161 N.H. 231, 235 (2010).

■ We cannot construe the words "defendant" and "party" in RSA 507:7-d in isolation, but must construe them both in the context of the overall statutory scheme, *In re Keelin B.,* 162 N.H. at 42, and in light of the policy the legislature sought to advance through that scheme, *see Appeal of Wilson,* 161 N.H. at 662. In *DeBenedetto,* we interpreted the word "party" as used in the apportionment of fault statute, RSA 507:7-e (the companion statute to the comparative fault statute, RSA 507:7-d), to refer to "all parties contributing to the occurrence" giving rise to a plaintiff's injuries. *DeBenedetto,* 153 N.H. at 804. The term "party," therefore, as used in RSA 507:7-e, is not limited to "those individuals or entities who are plaintiffs or defendants in the action." *Id.* (quotation omitted). ·

■ Because RSA 507:7-d and RSA 507:7-e are part of an integrated statutory scheme, the word "party" in RSA 507:7-d must have the same

meaning as it has in RSA 507:7-e. "Words used with plain meaning in one part of a statute are to be given the same meaning in other parts of the statute unless a contrary intention is clearly shown." *Appeal of Int'l Bhd. of Police Officers*, 148 N.H. 194, 195 (2002) (quotation omitted). Thus, in RSA 507:7-d, as in RSA 507:7-e, the word "party" means the parties to the transaction or occurrence giving rise to the plaintiff's injuries. *See DeBenedetto*, 153 N.H. at 803, 804. We note that unlike RSA 507:7-e, RSA 507:7-d was not amended in 1989. Its use of the term "defendants" dates back to a time when apportionment of fault was *not* allowed against non-parties. *See* RSA 507:7-e (1986). In light of the 1989 amendment to RSA 507:7-e and our subsequent case law interpreting that amendment, the word "defendant" as used in RSA 507:7-d, therefore, cannot be limited to the named defendants in the plaintiff's suit, but must include any tortfeasor found to have caused the plaintiff's injuries. *See DeBenedetto*, 153 N.H. at 803, 804.

Moreover, because RSA 507:7-d is the companion statute to RSA 507:7-e, we conclude that the aggregation of fault described in RSA 507:7-d includes the fault of all entities to whom fault has been apportioned, regardless of whether any are immune from liability. It follows that the phrase "defendants in the aggregate if recovery is allowed against more than one defendant," as used in RSA 507:7-d, applies to all entities whose fault has been apportioned under RSA 507:7-e. Accordingly, it was error for the trial court not to aggregate FedEx's fault with the fault of the USPS because both FedEx and the USPS were parties to the occurrence that gave rise to the plaintiff's injuries and fault was apportioned to them both. *See id.* at 803, 804.

To construe RSA 507:7-d otherwise would render it incompatible with RSA 507:7-e. If we were to construe the words "party" and "defendant" to refer only to the defendant named in a plaintiff's civil suit, a defendant could have fault apportioned to an immune party under the apportionment statute, RSA 507:7-e, but could then shield itself from liability for *any* damages under the comparative fault statute, RSA 507:7-d, even where it is a wrongdoer. Such a construction would undermine the purpose underlying RSA 507:7-d, which is to "allocate more equitably the responsibility for injuries due to negligent conduct on the part of parties on both sides of a lawsuit." *Allen v. Dover Co-Recreational Softball League*, 148 N.H. 407, 412 (2002) (quotation omitted). We cannot conclude that the legislature intended such an unjust result. *See Residents Defending Their Homes v. Lone Pine Hunter's Club*, 155 N.H. 486, 489 (2007). Accordingly, we hold that RSA 507:7-d and RSA 507:7-e must be construed together: Under the apportionment statute, RSA 507:7-e, fault may be apportioned

to an immune entity; under the comparative fault statute, RSA 507:7-d, any fault attributed to the immune entity must be aggregated with the fault attributed to any other tortfeasor.

Here, the trial court should have aggregated the USPS's fault (ninety percent) with FedEx's fault (four percent) for the purpose of determining whether the plaintiff's fault (six percent) barred him from recovery. *See* RSA 507:7-d. Because the plaintiff's fault is less than the aggregated fault of the USPS and FedEx, he is not barred from recovery, *see id.*; however, because FedEx is less than fifty percent at fault, the plaintiff's damages are limited to the damages attributable to FedEx, *see* RSA 507:7-e, I(b), which is four percent of the total damages found by the jury. Thus, judgment should have been awarded in the plaintiff's favor against FedEx in the amount of four percent of the total damages found by the jury ($1,445,700); that is, in the amount of $57,828, plus statutory interest and allowable costs.

As the dissent concedes, *DeBenedetto* is dispositive of the issue before us. Nevertheless, the dissent urges us to overrule *DeBenedetto* a mere five years after it was decided, and despite the fact that the plaintiff makes no such request.

"We do not lightly overrule a prior opinion." *State v. Duran*, 158 N.H. 146, 153 (2008). "The doctrine of stare decisis demands respect in a society governed by the rule of law, for when governing legal standards are open to revision in every case, deciding cases becomes a mere exercise of judicial will with arbitrary and unpredictable results." *Jacobs v. Director, N.H. Div. of Motor Vehicles*, 149 N.H. 502, 504 (2003) (quotations omitted). Several factors inform our judgment as to whether a decision should be overruled, including: (1) whether the rule has proven to be intolerable simply in defying practical workability; (2) whether the rule is subject to a kind of reliance that would lend a special hardship to the consequences of overruling; (3) whether related principles of law have so far developed as to have left the old rule no more than a remnant of abandoned doctrine; and (4) whether facts have so changed, or come to be seen so differently, as to have robbed the old rule of significant application or justification. *Id.* at 505; *see Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 833, 854-55 (1992).

Upon consideration of all of these factors, we cannot conclude that overruling *DeBenedetto* is warranted. Permitting a jury to consider "nonparties," such as immune tortfeasors, when apportioning fault is neither an "abandoned doctrine," nor impractical or unworkable. To the contrary, as noted above, such is the rule in many jurisdictions. Moreover,

the underlying rationale for such a rule is that true apportionment cannot be achieved unless that apportionment includes all tortfeasors who are causally negligent by causing or contributing to the occurrence in question, whether or not they are named parties to the case. *See Lasselle v. Special Products Co.*, 677 P.2d 483, 485 (Idaho 1984).

The dissent makes no argument specifically directed to any of the *Jacobs* factors. Instead, it contends that our ruling in *DeBenedetto* is "unconstitutional" in that it violates substantive due process. In support of this contention the dissent cites *Plumb v. Fourth Jud. Dist. Court*, 927 P.2d 1011, 1021 (Mont. 1996), for the proposition that apportioning fault to nonparties is not rationally related to a legitimate governmental issue. We find more persuasive the reasoning of *Haff v. Hettich*, 593 N.W.2d 383 (N.D. 1999), in which the court concluded that a statute requiring apportionment of damages, based upon actual fault, regardless of whether the tortfeasor was named as a party, was rationally related to "the legitimate legislative goal of improving the method of determining and fixing responsibility for fault and damages." *Id.* at 390. RSA 507:7-e is not arbitrary, unreasonable, or discriminatory; nor, as previously discussed, does it infringe upon a plaintiff's substantive right to recovery. *See id.* at 390. As in *Smiley v. Corrigan*, 638 N.W.2d 151, 154 n.7 (Mich. Ct. App. 2001), we too can "find no logical basis to conclude that evidence regarding the culpability of all tortfeasors involved in an incident will render the jury's verdict *less* accurate, as the *Plumb* Court appeared to conclude."

Neither are we persuaded by the dissent that *DeBenedetto* should be overruled on the basis of its interpretation of the relevant statutes. As we have explained, we interpret a statute to lead to a reasonable result and review a particular provision, not in isolation, but together with all associated sections. *See Appeal of Thermo-Fisher Scientific*, 160 N.H. 670, 672 (2010). For this reason we cannot permit a construction that would undermine the purpose underlying our comprehensive statutory framework for comparative fault, apportionment of liability, and contribution — that is, "to treat fairly those entities which may be unfairly treated" under the rule of joint and several liability. N.H.S. JOUR. 286 (1989); *see also Nilsson*, 150 N.H. at 395 (comprehensive statutory framework includes RSA 507:7-d through RSA 507:7-i); *Allen*, 148 N.H. at 412-13 (noting that RSA 507:7-d also serves to "allocate more equitably the responsibility for injuries due to negligent conduct on the part of parties on both sides of a lawsuit"). Moreover, as the dissent aptly notes, stare decisis has special force when statutory interpretation is concerned. *See Hilton v. South*

*Carolina Public Railways Comm'n*, 502 U.S. 197, 205 (1991). For these reasons, we decline the dissent's invitation to overrule *DeBenedetto*.

*Affirmed in part; reversed in part; and remanded.*

DUGGAN, J., concurred; BROCK, C.J., retired, specially assigned under RSA 490:3, dissented.

BROCK, C.J., retired, specially assigned under RSA 490:3, dissenting. The plaintiff, Alfred Ocasio, appeals from the entry of a judgment in favor of the defendant, Federal Express Corporation (FedEx). Because of the trial court's decision, the plaintiff received *nothing*, despite an award of $1.4 million by the jury. In my view, this fundamentally unfair result should not be allowed to stand. Respectfully, I dissent.

The plaintiff was a mail handler for the United States Post Office (USPS). His job included removing mail that was transported in large, heavy containers known as "air cans." On February 17, 2002, the plaintiff was gravely injured while removing air cans from a FedEx tractor trailer truck driven by Adam Thompson. Thompson backed his truck up to the loading and receiving dock and secured his vehicle. Although he thought that the back of the truck was properly aligned with the loading dock, there was, in fact, a gap between the truck and the loading dock. While pulling an air can from the FedEx truck with another employee, the plaintiff's right leg dropped into the gap, and the air can rolled into his leg, shattering it. Although the plaintiff's leg was saved after reconstructive surgery, it is of limited use. He cannot stand or walk for very long; he cannot lift and carry heavy things; and he cannot run. He has since lost his job at the USPS.

The issue on appeal is whether the trial court erred in two respects: first, when it instructed the jury to apportion fault to the USPS, even though the USPS was not a named party in the lawsuit and was immune from liability under the Federal Employees' Compensation Act, *see* 5 U.S.C.A. § 8116(c) (2007); and, again, when it ruled that the plaintiff could not recover against FedEx because the jury found that he was more at fault than FedEx, *see* RSA 507:7-d (2010). Because I believe that the trial court should not have required the jury to apportion fault to the USPS and because this error would necessitate a new trial, I address only this error.

The trial court, understandably, relied upon this court's decision in *DeBenedetto* when it instructed the jury to apportion fault to the USPS. *See DeBenedetto v. CLD Consulting Eng'rs*, 153 N.H. 793 (2006). At issue in *DeBenedetto* was whether the trial court had erred when it instructed the jury to apportion fault to two non-parties. *Id.* at 797. One non-party, Doris Christous, was the driver of the car that collided with the plaintiff's husband's car. *Id.* at 795. Christous's insurance carrier paid upon demand,

and Christous was not named as a defendant in the plaintiff's subsequent lawsuit. *Id.* The other non-party was the New Hampshire Department of Transportation (DOT), which was a named defendant, but which was dismissed before trial on grounds of immunity. *Id.*

The plaintiff argued that the trial court's instruction to the jury to include Christous and the DOT when apportioning fault violated the plain language of RSA 507:7-e, I(a) (2010). *Id.* at 797. RSA 507:7-e (2010) provides, in pertinent part:

I. In all actions, the court *shall*:

(a) Instruct the jury to determine, or if there is no jury shall find, the amount of damages to be awarded to each claimant and against each defendant in accordance with the proportionate fault of each of the parties; and

(b) Enter judgment against each party liable on the basis of the rules of joint and several liability, except that if any party shall be less than 50 percent at fault, then that party's liability shall be several and not joint and he shall be liable only for the damages attributable to him.

RSA 507:7-e, I(a), (b) (emphasis added).

The plaintiff argued that the words "party" or "parties," as used in RSA 507:7-e, I, referred only to the actual parties to the action. *DeBenedetto*, 153 N.H. at 800. The court disagreed, and construed the terms to refer to *anyone* who contributed to the plaintiff's loss, *including* unnamed and immune parties. *Id.* at 798, 803. In so doing, I believe that the court erred and, had I participated, I would have dissented. Because the error is of constitutional dimension, I believe that *DeBenedetto* should be overruled.

"The doctrine of stare decisis demands respect in a society governed by the rule of law, for when governing legal standards are open to revision in every case, deciding cases becomes a mere exercise of judicial will with arbitrary and unpredictable results." *Jacobs v. Director, N.H. Div. of Motor Vehicles*, 149 N.H. 502, 504 (2003) (quotations omitted). Thus, when asked to reconsider a previous holding, we do not decide the issue *de novo*; rather, we review "whether the ruling has come to be seen so clearly as error that its enforcement was for that very reason doomed." *Id.* at 504-05 (quotation omitted). "While we recognize the value of stability in legal rules," however, "the doctrine of stare decisis is not one to be either rigidly applied or blindly followed. The stability of the law does not require the continuance of recognized error." *Matarese v. N.H. Mun. Assoc. Prop.-Liab. Ins. Trust*, 147 N.H. 396, 400 (2002) (quotations omitted). Particularly when, as in this

case, the error is of constitutional dimension, I believe that the policies in favor of departing from precedent far outweigh those in favor of following stare decisis. *See Hilton v. South Carolina Public Railways Comm'n*, 502 U.S. 197, 205 (1991) (recognizing that stare decisis has special force when statutory interpretation is concerned, but less so when constitutional interpretation is concerned). Here, "justice demands and reason dictates that a change be made." *Dean v. Smith*, 106 N.H. 314, 318 (1965).

Because it was not argued on appeal, the court in *DeBenedetto* did not consider whether interpreting RSA 507:7-e, I(a), (b), to require a jury to apportion liability to, and the court to enter judgment against, non-parties violated substantive due process. In my opinion, it does.

I first address the constitutionality of RSA 507:7-e, I, as interpreted in *DeBenedetto*, under the State Constitution, *see State v. Ball*, 124 N.H. 226, 231 (1983), citing federal opinions for guidance only, *see id.* at 232-33.

"[S]ubstantive due process prevents the government from engaging in conduct that shocks the conscience, or interferes with rights implicit in the concept of ordered liberty." *State v. Furgal*, 161 N.H. 206, 213 (2010) (quotation omitted); *see United States v. Salerno*, 481 U.S. 739, 746 (1987). When, as in this case, the interest at stake is not a fundamental right, *see Carson v. Maurer*, 120 N.H. 925, 931 (1980) (right to recover for personal injuries is an important substantive right, but is not a fundamental right), *overruled on other grounds by Cmty. Res. for Justice v. City of Manchester*, 154 N.H. 748 (2007), the court applies the rational basis test. *See State v. Haas*, 155 N.H. 612, 613 (2007); *see also Medeiros v. Vincent*, 431 F.3d 25, 32 (1st Cir. 2005). The rational basis test under the State Constitution requires that legislation be rationally related to a legitimate governmental interest. *McKenzie v. Town of Eaton Zoning Bd. of Adjustment*, 154 N.H. 773, 778 (2007).

I agree with the conclusion in *DeBenedetto* that apportioning liability among those responsible for a plaintiff's damages may involve a legitimate governmental interest. *See DeBenedetto*, 153 N.H. at 807-09. I believe, however, that apportioning liability to non-parties, who are *not* named in a lawsuit and have *no* opportunity to defend themselves, is not rationally related to this legitimate governmental interest. *See Plumb v. Fourth Jud. Dist. Court*, 927 P.2d 1011, 1021 (Mont. 1996). A plaintiff's right to recover the amount of damages for which a defendant is *truly* proportionally responsible is jeopardized by the potential for disproportionately assigning liability to disinterested, unnamed, unrepresented and non-participating third parties. *See id.* at 1020. Non-parties, who may lack legal standing and are "[w]ithout the opportunity to appear and defend themselves, . . . are likely to be assigned a disproportionate share of liability." *Id.* In the instant

case, for example, although the USPS was not named and had no ability to defend itself, the jury, nonetheless, found that it was ninety percent at fault for the plaintiff's injuries.

Moreover, "[t]he greater the degree of fault that is assigned to [a] nonpart[y], the greater the reduction in the [plaintiff's] recovery." *Id.* Under RSA 507:7-e, I(b), each party is jointly and severally liable for the plaintiff's damages, unless the party is less than fifty percent at fault. In that case, the party's liability is several only and the party is liable "only for the damages attributable to him." RSA 507:7-e, I(b). In this case, had FedEx been found fifty percent or more at fault, FedEx would have been jointly and severally liable for the entire $1.4 million verdict. Because, however, the jury was instructed to apportion fault to the USPS, it found that FedEx was only four percent at fault.

I believe that apportioning liability to an immune employer, who also has a statutory right to receive a portion of any recovery the plaintiff may obtain from a third party, is particularly not rationally related to the State's legitimate objective of fairly apportioning liability among parties. *See* 5 U.S.C.A. § 8132 (2007) (under Federal Employees' Compensation Act, if beneficiary entitled to compensation from United States for injury or death to employee receives money or other property as a result of suit or settlement, after deducting therefrom the costs of suit and a reasonable attorney's fee, beneficiary must refund to United States the compensation United States paid); RSA 281-A:13, I(b) (2010) (under New Hampshire Workers' Compensation Law, employer or its carrier has lien on amount of damages recovered by employee from another person, less expenses and costs of action). In such a case, the plaintiff's recovery from a third-party tortfeasor is unjustifiably reduced twice, once because the jury has been allowed to apportion fault to the immune employer, and again because the immune employer must be reimbursed from whatever recovery the plaintiff receives from the third party. *See Best v. Taylor Mach. Works*, 689 N.E.2d 1057, 1083-84 (Ill. 1997). In such a case, the plaintiff may be effectively denied any meaningful recovery.

For the above reasons, therefore, I conclude that interpreting RSA 507:7-e, I, to require apportionment of fault or liability to non-parties violates substantive due process under the New Hampshire Constitution. Accordingly, I need not consider whether it also would violate the Federal Constitution. *See Ball*, 124 N.H. at 237.

Furthermore, in my view, not only is the *DeBenedetto* court's interpretation of RSA 507:7-e, I, unconstitutional, it is also wrong as a matter of statutory interpretation. This court is the final arbiter of the intent of the legislature as expressed in the words of the statute considered as a whole. *Coan v. N.H. Dep't of Env't Servs.*, 161 N.H. 1, 5 (2010). The court first

examines the language of the statute, and, where possible, ascribes the plain and ordinary meanings to the words used. *Id.* It reviews the trial court's statutory interpretation *de novo. Id.* Statutes, such as RSA 507:7-e, I, which are in derogation of the common law right to recover, are to be strictly construed. *See id.; see also Goudreault v. Kleeman,* 158 N.H. 236, 253-55 (2009).

In my opinion, the plain and ordinary meaning of the words "party" and "parties" as used in RSA 507:7-e, I, is confined to litigants — those who are currently or have been previously before the court in a particular action — and does *not* extend to non-parties. RSA 507:7-e, I(a) specifically refers to the "amount of damages to be awarded to each *claimant* and against each *defendant* in accordance with the proportionate fault of each of the *parties.*" (Emphases added.) Thus, as used in RSA 507:7-e, I(a), the word "parties" refers to "each claimant" and "each defendant." RSA 507:7-e, I(b) instructs a trial court to "[e]nter *judgment* against each party." (Emphasis added.) A court cannot enter judgment against a non-party. Accordingly, as used in RSA 507:7-e, I(b), the word "party" must also refer to each claimant and each defendant.

Other sections of RSA 507:7-e further evince this legislative intent. For instance, like RSA 507:7-e, I(b), RSA 507:7-e, I(c) also refers to granting "judgment against . . . parties." Additionally, RSA 507:7-e, II directs that "the damages attributable to each party shall be determined by general verdict, *unless the parties* agree otherwise" and cautions that questions to the jury must be clear and concise "and shall not prejudice the rights of any party to a fair trial." (Emphasis added.) Necessarily, only a litigant can agree or disagree as to the form of the verdict slip presented to the jury, and only a litigant has a right to a fair trial. The language used throughout RSA 507:7-e, strictly interpreted, makes clear that for apportionment purposes, the words "party" and "parties" refer only to the parties to the action. *See Bradford v. Herzig,* 638 A.2d 608, 612 (Conn. App. Ct. 1994).

Because I believe that *DeBenedetto* should be overruled, and that RSA 507:7-e, I, should not be interpreted to require apportionment of liability to non-parties, I would hold that the trial court erred by instructing the jury to apportion liability to the USPS. I would therefore vacate and remand for a new trial on liability only. As there has been no appellate challenge to the amount of the jury verdict, a new trial on damages would not be required.

In conclusion, it is my view that the substantial statutory and constitutional issues that have arisen in the wake of the legislature's adoption of RSA 507:7-e, I, have led the court into a jungle of unanticipated and, perhaps, unintended consequences. Plaintiffs' rights to a fair recovery have been greatly diminished in the process.